747 S.E.2d 482

CROUCH CONSTRUCTION COMPANY, INC., Appellant,

v.

Bryan CAUSEY, Celebrations of Columbia, LLC,
and Causey Consulting, LLC, Respondents,

v.

GS2 Engineering and Environmental Consultants,
Inc., Gist, Inc., Third Party Defendants.

Appellate Case No. 2011–195510.

No. 27300.

Supreme Court of South Carolina.

Heard April 17, 2013.

Decided Aug. 14, 2013.

Jean P. Derrick, of Lexington, for Appellant.

Gary A. Pickren, of Rogers Townsend & Thomas, PC, of Columbia, and Stephan V. Futeral, of Futeral & Nelson, LLC, of Mt. Pleasant, for Respondents.

Justice KITTREDGE.

This is a direct appeal from an order of the circuit court vacating an arbitration award on the ground of the arbitrator's "evident partiality." S.C.Code § 15–48–130(a)(2) (2005). We reverse.

## I.

This dispute arises from the construction of a commercial building in West Columbia, South Carolina. Before the undeveloped property was purchased, Respondent Bryan Causey hired GS2 Engineering and Environmental Consulting, Inc. (GS2) to perform an engineering analysis of the soils on the property to determine whether the land was suitable for construction. Following inspections and testing, GS2's engineering report indicated that the soils within a certain proximity of the surface were unsuitable and had to be removed and replaced with suitable soils.[1] Causey formed Causey Consulting, LLC (Causey Consulting) of which he is the sole member, and thereafter Causey Consulting purchased the property for the purpose of constructing the commercial building. Appellant Crouch Construction Company was retained as the general contractor. Based on GS2's initial report, the construction contract allowed $25,000 for "site work" to be conducted, which represented only a small part of the total contract amount of $616,538.

The parties' dispute began over the amount of unsuitable soils excavated from the building site. During construction, it became apparent that more unsuitable soil needed to be removed than was initially anticipated, and the removal of additional soil increased the cost of the project. The construction project was substantially completed by December 2008

---

1. GS2's engineering report also included recommendations as to the optimum moisture content and the density to which the replacement fill material should be compacted.

and was occupied by Respondent Celebrations of Columbia, LLC, of which Causey is also a member.

When Appellant did not receive final payment for the work, it filed a mechanic's lien and a suit to foreclose the lien in March 2009, claiming a balance due under the construction contract in the amount of $114,158. Respondents denied any debt to Appellant and raised various counterclaims seeking $296,018 in damages for incomplete and faulty construction work.[2]

In March 2010, the circuit court ordered arbitration pursuant to an arbitration clause in the construction contract. The parties agreed for attorney James Bruner of Bruner Powell Wall & Mullins, LLC, of Columbia, to serve as the arbitrator, and arbitration was conducted November 2–4, 2010. The arbitrator determined Appellant was owed $68,160 under the contract, plus interest, attorney's fees and costs.[3] Although two engineers from GS2—George Sembos and Chad Bruorton—testified as Appellant's fact and expert witnesses during the arbitration hearings, GS2 was not a party to the arbitration proceedings.

On February 3, 2011, Respondents filed their first motion to vacate the award, seeking to have it set aside based on several unfavorable evidentiary rulings and general allegations that the arbitrator manifestly disregarded the law. A hearing was conducted on February 14, 2011. At the conclusion of the hearing, the circuit court instructed the parties that it would deny Respondents' motion to vacate and instructed Appellant's counsel to prepare an order confirming the arbitration award. However, before an order was entered, Respondents learned "by happenstance" that an engineer employed by GS2, Jayson Floyd, was the brother of one of the arbitrator's law partners,

2. Essentially, Respondents claimed the building's foundation was settling. Respondents sought to recover the $211,996 spent installing stabilization piers.

3. In calculating the amount of the award, the arbitrator specifically found that Appellant's subcontractors had over-excavated approximately 1700 cubic yards of soil and that the outstanding contract balance must be reduced to remove charges for that unnecessary work. In addition, the arbitrator made several other reductions and adjustments reducing the amount sought by Appellant. However, Respondents were not awarded any offset based on the arbitrator's determination that the foundation was not settling.

Joey Floyd. As a result, on March 20, 2011, Respondents filed a supplemental motion to vacate the arbitration award, reiterating their previous arguments and raising several new claims, including that the arbitrator's failure to disclose his law partner's familial relationship with an employee of GS2 amounted to "evident partiality," requiring the award to be set aside.

The circuit court granted the motion to vacate the arbitration award, finding the arbitrator had a duty to discover and disclose his law partner's familial relationship with a GS2 employee and that the arbitrator's failure to do so was tantamount to evident partiality. In finding vacatur was warranted, the circuit court held the relevant legal standard for analyzing claims of evident partiality under section 15–48–130 is not the language of the statute itself, but rather, is the standard set forth in the South Carolina Code of Ethics for Arbitrators, which requires disclosure of any relationship that "might reasonably create an appearance of partiality or bias." [4] The circuit court concluded that the undisclosed relationship was "clearly the type of relationship" that created an appearance of partiality and, therefore, the award should be set aside. As an alternative holding, the circuit court found that, even if the "appearance of bias" standard was not applicable and the appropriate legal standard was that of the Fourth Circuit Court of Appeals in *ANR Coal Co. v. Cogentrix of North Carolina*,[5] Respondents met their burden of proving evident partiality. In so finding, the circuit court noted the existence of the undisclosed relationship and several unfavorable evidentiary rulings and vacated the arbitration award, concluding that, on the whole, the arbitrator's conduct demonstrated evident partiality in favor of Appellants.

Following the circuit court's denial of Appellant's motion to alter or amend, this appeal followed. The matter was certified to this Court pursuant to Rule 204(b), SCACR.

## II.

■ The circuit court's adoption of a legal standard for evaluating claims of evident partiality under section 15–48–130

---

4. *Code of Ethics for Arbitrators* Canon II A(2), App. A, SCADRR.

5. 173 F.3d 493 (4th Cir.1999).

is a question of law which we review de novo. *See Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) ("Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo."); *Catawba Indian Tribe of S.C. v. State,* 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007) ("We are free to decide a question of law with no particular deference to the circuit court.").

Nevertheless, " '[g]enerally, an arbitration award is conclusive and courts will refuse to review the merits of an award.' " *C–Sculptures, LLC v. Brown,* 403 S.C. 53, 56, 742 S.E.2d 359, 360 (2013) (quoting *Gissel v. Hart,* 382 S.C. 235, 241, 676 S.E.2d 320, 323 (2009)). "An award will be vacated only under narrow, limited circumstances." *Id.* "The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145, 151, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (White, J., concurring). In reviewing arbitration awards, "the standards for judicial intervention are ... narrowly drawn to assure the basic integrity of the arbitration process without meddling in it." *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 681 (7th Cir.1983). "The reasons for this are not hard to identify." *In re Andros Compania Maritima, S.A.,* 579 F.2d 691, 700 (2d Cir.1978). "There is an obvious possibility ... that 'a suspicious or disgruntled party can seize' upon an undisclosed relationship 'as a pretext for invalidating the award.' " *Id.* (quoting *Commonwealth Coatings,* 393 U.S. at 151, 89 S.Ct. 337 (White, J., concurring)). Thus, we seek to discourage "the losing party to every arbitration" from "conduct[ing] a background investigation of each of the arbitrators in an effort to uncover evidence" to have the arbitration award set aside. *Merit Ins. Co.,* 714 F.2d at 683.

## III.

Appellant argues the circuit court applied an incorrect legal standard and erred in setting aside the arbitration award based on a finding that the arbitrator breached an ethical duty to discover and disclose that his law partner's brother was employed at GS2 at the time of the arbitration proceedings. We agree.

The South Carolina Code of Ethics for Arbitrators requires arbitrators to disclose the existence of interests or relationships that are likely to affect their impartiality or suggest that they are biased against one party or favorable to another. *Code of Ethics for Arbitrators* Canon II, App. A, SCADRR. However, an arbitrator is not required to provide the parties with "his complete and unexpurgated business biography" or "disclose interest[s] or relationships that are merely 'trivial.'" *Id.* at n. 2. Before arbitration, the arbitrator initially ran a conflicts check through his law firm's database for each of the *parties*. That conflict check revealed no material interest or relationship, and thus, no disclosure was made. Subsequently, a few weeks before arbitration, the parties submitted witness lists, which the arbitrator reviewed to ensure he personally had no interest or relationship which would need to be disclosed.[6] Once again, no material interest was discovered, and no disclosure was made. Although GS2's engineering recommendations related to the crux of the parties' construction dispute, there is no indication in the record of any direct social, professional or financial connection between the arbitrator and Jayson Floyd or any other GS2 employee at any time.

 The circuit court improperly conflated a purported breach of the South Carolina Code of Ethics for Arbitrators with a factual showing that justifies setting aside an arbitration award. While an arbitrator's failure to disclose a material conflict of interest may constitute an ethical violation, the issue of whether such nondisclosure is unethical is separate and distinct from the issue of whether an arbitration award must be vacated due to evident partiality. To have an award set aside, it is not enough merely to aver that an arbitrator violated the Code of Ethics without any showing that the complained-of violation "created a substantial danger of an unjust result." *Merit Ins. Co.*, 714 F.2d at 682–83. *See ANR Coal*, 173 F.3d at 499 (finding that an arbitrator's failure to disclose in violation of the arbitration rules does not, in and of itself, constitute an independent basis for vacatur); *Merit Ins. Co.*, 714 F.2d at 680 ("[E]ven if the [arbitrator's] failure to

6. The same seven GS2 employees were named on both Appellant's and Respondents' potential witness lists.

disclose was a material violation of the ethical standards applicable to arbitration proceedings, it does not follow that the arbitration award may be nullified judicially. Although we have great respect for the Commercial Arbitration Rules and the Code of Ethics for Arbitrators, they are not the proper starting point for an inquiry into an award's validity. . . ."). Thus, mindful of the limited scope of judicial review of arbitration awards, we must discern the proper legal standard for evaluating claims of evident partiality.

In this case, the circumstances in which the arbitration award may be set aside are controlled by the South Carolina Uniform Arbitration Act [7] (SCUAA), which provides four [8] grounds for vacatur.[9] At issue here is the provision allowing an arbitration award to be set aside where there was "evident partiality by an arbitrator appointed as a neutral . . . prejudicing the rights of any party." S.C.Code § 15–48–130(a)(2). We have no South Carolina precedent construing this standard. Although there are some differences between the language of the SCUAA and the Federal Arbitration Act

---

7. S.C.Code §§ 15–48–10 to –240 (2005).

8. Although it is not pertinent to our analysis, we acknowledge that an arbitration award also may be vacated based upon the non-statutory ground of manifest disregard of the law. *See C–Sculptures*, 403 S.C. at 56, 742 S.E.2d at 360 ("[A]n arbitrator's manifest disregard of the law, as a basis for vacating an arbitration award occurs when the arbitrator knew of a governing legal principle yet refused to apply it.").

9. Appellant now argues the provisions of the Federal Arbitration Act (FAA) are controlling because the underlying construction contract involved interstate commerce. However, Respondents' motion to vacate and the circuit court's order vacating the arbitration award both rely upon the "evident partiality" standard in section 15–48–130(a)(2) of the South Carolina Code—not the FAA—and Appellant failed to raise this issue below. Accordingly, it is not preserved for appellate review. *See Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("It is 'axiomatic that an issue cannot be raised for the first time on appeal.' " (quoting *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998))). Moreover, the presence of interstate commerce does not affect the applicability of state law here. *See Joseph v. Advest, Inc.*, 906 A.2d 1205, 1209–11 (Pa.Super.Ct.2006) (finding state law applies even in the presence of interstate commerce so long as the particular provision of state law "does not conflict with the FAA's purpose of expeditious resolution of legal matters through arbitration"). Thus, our review concerns only the application of section 15–48–130 of the South Carolina Code.

(FAA),[10] both provide for an arbitration award to be vacated upon a showing of "evident partiality." *See* 9 U.S.C. § 10(a)(2) (an arbitration award may be vacated upon the application of any party "where there was evident partiality or corruption in the arbitrators"). Given the absence of state-law precedent interpreting section 15–48–130(a)(2), we find it is appropriate in this instance to look to federal interpretations of the FAA's "evident partiality" standard for guidance in interpreting the South Carolina statute.

The plain language of section 15–48–130(a)(2) requires a party to show partiality that is "evident"—namely, that which is "direct, definite, and capable of demonstration." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir.1998) (construing the FAA's analogous "evident partiality" provision). "The word 'evident' suggests that the statute requires more than a vague appearance of bias." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 253 (3d Cir.2013). "[T]he arbitrator's bias must be sufficiently obvious that a reasonable person would easily recognize it." *Id.* Therefore, to come within the statute's "strong language" requiring a showing of "evident partiality," the undisclosed facts must be "powerfully suggestive of bias." *Merit Ins. Co.*, 714 F.2d at 681.

Notwithstanding the "strong language" of section 15–48–130(a)(2) requiring arbitral bias to be "evident," the circuit court found the proper legal standard for evaluating claims of evident partiality was whether the undisclosed facts might "create an appearance of partiality or bias." [11] This was error,

---

10. 9 U.S.C. §§ 1–16 (2012).

11. In so finding, the circuit court relied heavily upon *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994). *Schmitz* represents a departure from prior cases decided by the Ninth Circuit Court of Appeals. *See, e.g., Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir.1985) ("The party alleging evident partiality must establish specific facts which indicate improper motives on the part of the [arbitrator]. The appearance of impropriety, standing alone, is insufficient."). As noted by the Fifth Circuit Court of Appeals, as to the "appearance of bias" legal standard, *"Schmitz* is an outlier." *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 283 (5th Cir.2007) (finding *Schmitz* constitutes an unwarranted extension of the language of *Commonwealth Coatings* and noting that, "[i]ronically, *Schmitz's* 'mere appearance' standard would make it

for the analysis must begin with the language of the section 15–48–130(a)(2), and particularly the requirement that an arbitrator's partiality be "evident." *See State v. Whitesides*, 397 S.C. 313, 317, 725 S.E.2d 487, 489 (2012) (citing *Mid–State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996)) (noting "[t]he words of [a] statute must be given their ordinary meaning"); *Grimsley v. S.C. Law Enforcement Div.*, 396 S.C. 276, 281, 721 S.E.2d 423, 426 (2012) ("[A] court must abide by the plain meaning of the words of a statute."). Plainly, the word "evident" requires a party to show something "more than a vague appearance of bias." *Freeman*, 709 F.3d at 253 (distinguishing the legal standard embodied in the phrase "evident partiality" from the federal judicial standard requiring recusal "if a judge's impartiality might reasonably be questioned" (internal quotations omitted)). Thus, the language of section 15–48–130(a)(2) requires us to reject the appearance-of-bias standard applied by the circuit court. Further, although various courts may articulate slightly different formulations, our research reveals that a clear majority of courts reject the appearance-of-bias standard.[12]

---

easier for a losing party to challenge an arbitration award for nondisclosure than for actual bias"). Respondents urge this Court to follow the circuit court in relying upon *Schmitz* and adopting a standard that allows an evident partiality finding on the mere "appearance of bias" and "an impression of possible bias." For the reasons discussed in this opinion, we reject *Schmitz* and the appearance-of-bias standard urged by Respondents and adopted by the circuit court.

**12.** *See, e.g., Freeman*, 709 F.3d at 253 ("An arbitrator is evidently partial only if a reasonable person would have to conclude that she was partial to one side. The conclusion of bias must be ineluctable, the favorable treatment unilateral."); *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir.2007) ("Unlike a judge, who can be disqualified in any proceeding in which his impartiality *might* reasonably be questioned, an arbitrator is disqualified only when a reasonable person, considering all of the circumstances, would *have* to conclude that an arbitrator was partial to one side." (internal quotations and citations omitted)); *Positive Software Solutions*, 476 F.3d at 283 (noting that "evident partiality means more than a mere appearance of bias" and holding "in nondisclosure cases, an award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding."); *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 433 (11th Cir.1995) ("[T]he alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative, ... [and] the

 Thus, consistent with the majority of courts, we reject the appearance-of-bias standard and find the approach that best comports with the language of section 15–48–130(a)(2) is that which requires the party seeking vacatur to "demonstrate 'that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration.'" *ANR Coal Co. v. Cogentrix of North Carolina*, 173 F.3d 493 (4th Cir.1999) (quoting *Consolidation Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125, 129 (4th Cir.1995)) (applying the standard established in *Morelite Const. Corp. v. NYC Dist. Council Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir.1984)).

 "The evident-partiality standard is, at its core, directed to the question of [arbitrator] bias." *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 73 (2d Cir.2012). "The party asserting bias 'must establish *specific facts* that indicate improper motives on the part of an arbitrator.'" *Freeman*, 709 F.3d at 252 (emphasis added) (quoting *Peoples Sec. Life Ins. v. Monumental Life Ins.*, 991 F.2d 141, 146 (4th Cir.1993)). "The movant carries a heavy burden in order to meet this onerous standard." *ANR Coal*, 173 F.3d at 501 (internal quotations and citations omitted). "In inquiring whether that burden has been satisfied, the court 'employs a case-by-case approach in preference to dogmatic rigidity.'" *Scandinavian*, 668 F.3d at 72 (quoting *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir.2004)). "A conclusion of partiality can be inferred 'from objective facts inconsistent with impartiality.'" *Id.* (quoting *Pitta v. Hotel Ass'n of NYC*, 806 F.2d 419, 423 n. 2 (2d Cir.1986)).

---

mere appearance of bias or partiality is not enough to set aside an arbitration award."); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989) ("[T]o invalidate an arbitration award on the grounds of bias, the challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration."); *Morelite Construction Corp. v. NYC Dist. Council Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir.1984) (noting the appearance-of-bias standard was so low that it effectively invalidated many of the goals of arbitration, including the benefit that arbitrators are generally knowledgeable about the field and have countless business relationships in that field, many of which would meet the appearance-of-bias standard, along with the goals of efficiency and cost minimization, both of which would be seriously undermined if disgruntled parties seek to invalidate the award in every case).

"A court should examine four factors to determine if a claimant has demonstrated evident partiality: (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding." *ANR Coal*, 173 F.3d at 500 (citing *Consolidation Coal*, 48 F.3d at 130). "When considering each factor, the court should determine whether the asserted bias is 'direct, definite and capable of demonstration rather than remote, uncertain or speculative' and whether the facts are sufficient to indicate 'improper motives on the part of the arbitrator.'" *Id.* (quoting *Consolidation Coal*, 48 F.3d at 129). "A party need not prove that the arbitrator, in fact, had improper motives." *Id.* "To do so would make the standard for evident partiality equivalent to proving actual bias." *Id.* at 500–01. "But a party seeking vacatur must put forward facts that *objectively* demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." *Id.* at 501.

Additionally, "the Code [of Ethics] provides no basis for vacatur." *Id.* at 499 n. 4. "Nor does an arbitrator have some general 'enhanced duty' to investigate." *Id.* Of course, an arbitrator's failure to investigate material facts may be probative of evident partiality, but it is not dispositive of the issue. *Id.* "[M]ere nondisclosure does not in itself justify vacatur." *Id.* at 500–01. In nondisclosure situations, "[t]he question is whether the *facts* that were not disclosed suggest a material conflict of interest." *Scandinavian*, 668 F.3d at 77.

"[F]or a relationship to be material, and therefore require disclosure, it must be such that a reasonable person would have to conclude that an arbitrator who failed to disclose it was partial to one side." *Id.* at 76 (internal citations and quotations omitted). In doing so, courts "must focus on the question of how strongly that [undisclosed] relationship tends to indicate the possibility of bias in favor of or against one party, and not on how closely that relationship appears to relate to the facts of the arbitration." *Id.* at 75. "[E]ven if a particular relationship might be thought to be

relevant to the arbitration at issue, that relationship will nevertheless not constitute a material conflict of interest if it does not itself tend to show that the arbitrator might be predisposed in favor of one (or more) of the parties." *Id.* at 75–76 (internal citation and quotations omitted).

We now examine the *ANR Coal* factors alongside the findings of the circuit court, beginning with the factors concerning the nature and extent of the relationship and the directness of the undisclosed relationship to the arbitration proceedings. In finding Respondents proved evident partiality, the circuit court acknowledged that GS2 was not a party to the arbitration. However, because the underlying dispute was centered around GS2's performance as a subcontractor and representatives of GS2 served as Appellant's expert witnesses during arbitration, the circuit court concluded that "the arbitrator had a personal interest in avoiding an award that impugned the professional integrity of the company managed by his law partner's brother." This finding is wholly unsupported by any objective fact in the record.

The facts here do not give rise to any objective finding of partiality. It is uncontroverted the arbitrator was unaware of the undisclosed relationship until several months after the arbitration award was made. In any event, the mere existence of this relationship alone does not establish bias and cannot, without more, demonstrate evident partiality, notwithstanding the fact that it may appear to relate to the facts of the arbitration. *See Scandinavian,* 668 F.3d at 75 (noting the analysis does not turn on whether the undisclosed relationship "appears to relate to the facts of the arbitration"); *ANR Coal,* 173 F.3d at 500–01 ("[M]ere nondisclosure does not in itself justify vacatur."). Although it would have been preferable for the arbitrator to have discovered and disclosed the relationship, under these facts, vacatur was not required. Regarding the connection of the relationship to the arbitration, as previously noted, GS2 was not a party to the arbitration proceedings and the arbitrator has no direct relationship with Jayson Floyd, the GS2 employee. The undisclosed relationship is tenuous and remote, and we find the failure to disclose it is not "inconsistent with impartiality." *Scandinavian,* 668 F.3d at 72.

Further, the challenge in *ANR Coal* involved the arbitrator's relationship to a *party* to the arbitration—not merely to an entity that is a third-party defendant in the underlying litigation and employs several factual and expert witnesses who testified during the proceedings. While an arbitrator's undisclosed relationship with a non-party witness may, in an appropriate case, serve as the basis for a finding of evident partiality, the probability of bias must be objectively demonstrated.

Lastly, as to "the proximity in time between the relationship and the arbitration proceeding," there is evidence in the record that Jayson Floyd was employed by GS2 before and during the time of the arbitration proceedings. However, Jayson Floyd was not employed by GS2 during the time GS2 performed work on the construction project. Indeed, the project was substantially complete by December 2008, and Jayson Floyd was not hired by GS2 until August 2009. Moreover, we reiterate the uncontroverted fact that based on the record before us the arbitrator was *unaware of the relationship* at the time the award was rendered. Thus, it would be unreasonable for this Court to assume that the arbitrator reached his decision as a result of some sort of predisposition in favor of GS2; we therefore decline to do so. *See Overseas Private Inv. Corp. v. Anaconda Co.*, 418 F.Supp. 107, 112 (D.D.C.1976) ("When the existence of a potentially prejudicial relationship is not known to an arbitrator, there is no possible way in which the relationship can affect his decision.").

Respondents have not met their burden of showing specific facts, directly or circumstantially, which demonstrate the arbitrator acted in a partial or biased manner. *See ANR Coal*, 173 F.3d at 501 (citing *U.S. Wrestling Fed'n v. Wrestling Div. of AAU, Inc.*, 605 F.2d 313 (7th Cir.1979)) (holding an arbitrator's connection with a non-party did not constitute evident partiality even though the non-party had a relationship with a party to the arbitration); *Cook Indus., Inc. v. C Itoh & Co.*, 449 F.2d 106 (2nd Cir.1971) (upholding arbitration award even though one arbitrator was an employee of a company who had a major supply contract with a party to the arbitration). Just as the Fourth Circuit observed in *ANR Coal*, "it is difficult to understand how the facts of this case demonstrate any 'per-

sonal interest' on [the arbitrator]'s part." *ANR Coal*, 173 F.3d at 502.

The circuit court misapprehended the burden of proof by seemingly requiring Appellant to disprove evident partiality, yet the circuit court's erroneous burden of proof allocation is one that naturally flows from an "appearance of bias" and "an impression of possible bias" standard. The burden of proof lies with the party seeking to have the arbitration award set aside. Here, instead of establishing specific facts indicating the arbitrator's bias or improper motives, Respondents simply showed that the arbitrator failed to disclose that one of his law partners has a brother who is employed by GS2.[13] From this remote and attenuated relationship, Respondents embarked on a campaign of nefarious speculation.

Evident partiality, as a statutory ground to vacate an arbitration award, requires a strong and objective showing of probable arbitrator bias. No case we have discovered in research or briefs has vacated an arbitration award for nondisclosure of such an obscure, tenuous relationship as the one here. *See ANR Coal*, 173 F.3d at 502 (finding the arbitrator's failure to disclose attenuated connections between his law firm and a party did not constitute evident partiality and did not permit nullification of the arbitration award, even if it violated AAA's arbitration rules); *Al–Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C.Cir.1996) (finding no evident partiality demonstrated by fact that the arbitrator's former law firm had represented the prevailing party in matters unrelated to the arbitration); *Peabody v. Rotan Mosle, Inc.*, 677 F.Supp. 1135, 1139 (M.D.Fla.1987) (where the brother of the arbitrator's law partner was once the personal attorney of a witness to the arbitration proceeding, the arbitration award was not vacated as the claimed basis was "remote, uncertain and speculative claim of bias, not enough to establish evident partiality"); *Sofia Shipping Co., Ltd. v. Amoco Transp. Co.*, 628 F.Supp. 116, 122 (S.D.N.Y.1986) (finding that the arbitrator's failure to

---

**13.** We do appreciate that proof of bias will rarely be obvious and straightforward. The proof may often be circumstantial, with reliance on reasonable inferences. But a mere appearance of bias is not enough. A circuit court, of course, has the discretion to grant discovery where warranted. In this case, Respondents did not seek to conduct discovery.

disclose his relationship with an employee and witness for the plaintiff, without specific proof of bias, did not show evident partiality and stating "[t]he fact that there is an overlap in the relations of the individuals involved does not in itself provide grounds for vacating an award"); *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36, 42 (1993) (rejecting evident partiality claim where the arbitrator had a lawsuit pending against employer of party's expert witness and noting district court's factual finding that arbitrator had no duty to disclose the lawsuit and arbitrator's "interest, if any was de minimis"). Therefore, we conclude the circuit court's decision to set aside the arbitration award under these circumstances constitutes reversible error.

However, in so holding, we caution that:

We do not in any way wish to demean the importance of timely and full disclosure by arbitrators. Disclosure not only enhances the actual and apparent fairness of the arbitral process, but it helps to ensure that that process will be final, rather than extended by proceedings like this one. We again reiterate Justice White's observation that it is far better for a potential conflict of interest "to be disclosed at the outset" than for it to "come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award."

*Scandinavian,* 668 F.3d at 78 (quoting *Commonwealth Coatings,* 393 U.S. at 151, 89 S.Ct. 337 (White, J., concurring)).

An arbitrator's duty to disclose all material information is an important one, critical to ensure the fundamental fairness of the arbitral proceedings. However, given the strong showing required to set aside an award and the weighty policy goals in favor of arbitration, the facts of this case simply do not justify vacatur under section 15–48–130(a)(2).

## IV.

The evidence compels only one conclusion—the arbitrator was not evidently partial towards GS2 or either party. While the evident partiality standard certainly has efficacy, it should not be invoked where, as here, the showing of partiality is

nothing more than mere speculation. We reverse and remand to the circuit court for confirmation of the arbitration award.

REVERSED AND REMANDED.

TOAL, C.J., BEATTY, J., and Acting Justices JAMES E. MOORE and D. CRAIG BROWN, concur.