Present: Powell, C.J., Kelsey, McCullough, Chafin, Russell, and Mann, JJ., and Mims, S.J.

DEVIN J. GAROFALO

v. Record No. 250094

JANE W. DI VINCENZO

OPINION BY
JUSTICE THOMAS P. MANN
FEBRUARY 26, 2026

FROM THE COURT OF APPEALS OF VIRGINIA

In this case of first impression, we define the standard for "evident partiality" as a ground for vacating an arbitration award under the Virginia Uniform Arbitration Act ("VUAA"), Code § 8.01-581.010(2). We hold that a party seeking vacatur for evident partiality must objectively demonstrate that a reasonable person, knowing all the relevant facts, would conclude that the arbitrator's conduct signifies obvious bias against that party. Applying this standard, we affirm the judgment of the Court of Appeals.

## I.  BACKGROUND

Jayne Di Vincenzo sold her company, Lions Bridge Financial Advisors, Inc. ("Lions Bridge"), to Devin Garofalo and his financial securities company in early 2020. In exchange for Di Vincenzo's assets under management, Garofalo would pay 40% of the purchase price up front, followed by quarterly payments thereafter. When Garofalo did not make his quarterly payments to Lions Bridge, the deal soured. Di Vincenzo commenced arbitration under the Financial Industry Regulatory Authority's ("FINRA") rules,[1] seeking to enforce the terms of their agreement in late 2020.

---

[1] As financial services companies, Garofalo and Di Vincenzo associated with FINRA and agreed in their contract to use FINRA arbitration procedures in case of a dispute. *See* FINRA Rule 13200 ("[A] dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among Members; Members or Associated Persons; or Associated Persons."). The agreement also specifies that any party seeking to enforce the agreement must do so in a Virginia state or federal court.

*A.  The FINRA Arbitration*

The FINRA rules embrace a robust disclosure regime for its arbitrators:  "Arbitrator disclosure is the cornerstone of FINRA arbitration, and the arbitrator's duty to disclose is continuous and imperative."  For instance, FINRA Rule 12405 requires would-be arbitrators to "disclose any direct or indirect financial or personal interest in the outcome of the arbitration, as well as any existing or past, direct or indirect, financial, business, professional, family, social or other relationships with any of the parties, representatives, witnesses or co-panelists."  That "duty to disclose," per the Rule, is "ongoing."  FINRA arbitrators "should consider all aspects of their professional and personal lives and disclose all ties between the arbitrator, the parties, and the matter in dispute, no matter how remote they may seem."  The FINRA Dispute Resolution Guide lists as an example "service on boards of directors" as a potential association requiring disclosure.  "Failure to disclose," the Guide warns, "may result in vacated awards which undermine the efficiency and finality of our process."

On December 28, 2020, Michael Glasser, an attorney in Norfolk, received an email naming him a potential arbitrator for the Lions Bridge sale dispute.  The email listed Di Vincenzo, Garofalo, and Garofalo's company as the parties, provided basic case information, and included a short disclosure form for Glasser.  Glasser affirmed that he had no conflicts or updated disclosures to provide to FINRA at that time.  Glasser reached out to his law firm staff thirteen minutes later to run a conflicts check across all firm databases for Di Vincenzo, her counsel, Garofalo, his counsel, and Garofalo's company.  The conflicts check revealed no apparent issues.

In line with FINRA disclosure procedures, Glasser later completed a 15-page disclosure report and checklist. Within his submission, Glasser signed an "Oath of Arbitrator" form that read, in part:

> I affirm that . . . I have no direct or indirect interest in this matter; I know of no existing or past financial, business, professional, family or social relationship which would impair me from performing my duties; and that I will decide the controversy in a fair manner and render a just award.

Glasser again denied on his disclosure checklist that he had any "professional, social, or other relationships or interactions" with any of the parties to the arbitration. Glasser also disclosed many known conflicts stemming from his law practice and other community involvements.

But now, Garofalo focuses on what Glasser did not disclose on his disclosure forms. Garofalo points to "strategic partnerships" and prior relationships that, in his view, warrant vacatur due to "evident partiality."

*B. Old Point, Glasser, and Lions Bridge*

Glasser disclosed that he serves on the board of directors of Old Point Financial Corporation ("Old Point"), a position he has maintained since 2009. Old Point is a holding company whose subsidiaries are Old Point National Bank (the "Bank") and Old Point Trust & Financial Services N.A. (the "Trust"). The Bank provides commercial banking services, while the Trust provides investment banking services. While the two companies are organized separately in accordance with federal law, both report to Old Point, and their revenues flow to Old Point. Moreover, Old Point and the Bank share their board of directors, and the Trust shares only some members with the Bank's board.

The Trust had previously dealt with Di Vincenzo's company. In late 2014, the Trust entered into a partnership with Lions Bridge. Glasser took no part in negotiating the partnership

3

with Lions Bridge because it was a partnership between the *Trust* and Lions Bridge. Under the partnership agreement, Di Vincenzo's company would offer financial advising to the Trust's customers (who were sometimes the Bank's customers, too). The Trust allowed Lions Bridge to use office space in its building; Lions Bridge employees would, as required, use placards to announce their presence at the Trust when meeting with clients; and Lions Bridge, the Bank, and the Trust all shared the same main entrance. Glasser also kept his law offices in the same building and held a partial ownership stake in the property, which ceased before the arbitration.

On top of his duties on Old Point's board, Glasser chaired the Southside Regional Board, a marketing arm of the Bank aimed at increasing customer referrals. Di Vincenzo presented to the Board on behalf of Lions Bridge on October 21, 2014, and April 15, 2015. In 2014, Glasser introduced the Trust's CEO, who then introduced Di Vincenzo's company as the "[Bank's] newest strategic alliance." In 2015, after Glasser himself introduced her to the Board, Di Vincenzo presented her financial advising services and her "comprehensive financial advising approach." The record also suggests that Glasser received executive reports and meeting minutes in binders that mentioned Di Vincenzo (among hundreds of other unrelated documents) before Board meetings.[2] Glasser *did not* separately list this involvement with the Southside Regional Board before the Arbitration.

But later in 2015, the Trust's partnership with Di Vincenzo's company started "falling apart." The two companies ended their venture after fifteen months due to low revenues. The record does not include any other instances of Glasser and Di Vincenzo interacting after the termination of the partnership.

---

[2] The record further suggests that Glasser and Di Vincenzo may have attended at least two of the same company events.

4

Glasser was appointed to the final arbitration panel, and the FINRA Arbitration took place in December 2021. The three-member arbitration panel unanimously found Garofalo in default of his obligations under the Asset Purchase Agreement, ordered compensatory damages, and denied his counterclaims.

In March 2022, Di Vincenzo moved to confirm the award in the Circuit Court for the City of Richmond. Garofalo responded to the motion and concurrently cross-petitioned the circuit court to vacate the award under Code § 8.01-581.010(2). Garofalo argued there was "evident partiality" by Glasser due to his nondisclosure of past business relations with Di Vincenzo and Lions Bridge.

Glasser testified that he "had no relationship with [Di Vincenzo or Garofalo]." Glasser said he did not remember meeting Di Vincenzo and did not know who she was when he took his oath as an arbitrator. "If I had," Glasser explained, "the rules would have been irrelevant. I wouldn't have taken the case, had I known about it." Glasser supposed that "[i]n a perfect world," he "maybe" would have called Old Point to double-check whether Di Vincenzo had ever been a financial advisor to the Bank. Glasser thought he "did not take it to the extreme of going through and asking the [B]ank whatever context they may have had." Asked if he would have withdrawn from the case had he remembered his prior contact with Di Vincenzo, Glasser stated, "I would certainly have disclosed it, and I likely would not have been involved in the case." Counsel for Garofalo then asked Glasser why he would do so, suggesting that it could "create[] an appearance that would call into question whether [he] would be impartial" to Garofalo because of the Trust's partnership with Lions Bridge. Glasser replied, "I think that's fair."

5

When counsel for Garofalo pressed whether those concessions compromise his arbitrator oath, Glasser said that "I stand by my oath, [counsel], just as I'm standing by it today."

The trial court denied Garofalo's cross-petition to vacate because it did not find "evident partiality" by Glasser. On the statute's terms, the trial court concluded, "evident partiality" amounts to "clear bias or favoritism by an arbitrator in a proceeding." "The words themselves require that the partiality be in existence, as opposed to potentially in existence, and that the existence of the actual bias be obvious." Given the lack of precedent on this statutory provision and our prior interpretations of the Federal Arbitration Act ("FAA"), the trial court adopted the Fourth Circuit's four-factor test in *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493 (4th Cir. 1999).[3]

Garofalo timely appealed the trial court's ruling denying his cross-petition to vacate. In a published opinion, the Court of Appeals affirmed, looking also to *ANR Coal* to interpret "evident partiality" under the VUAA. *Garofolo v. Di Vincenzo*, 83 Va. App. 118, 136-37 (2024). Like the trial court, the Court of Appeals held that Glasser's "undisclosed connections with Di Vincenzo and Lion's [sic] Bridge were not significant enough that 'a reasonable person would have to conclude that the arbitrator was partial.'" *Id.* (quoting *ANR Coal*, 173 F.3d at 500). The Court of Appeals reasoned, using *ANR Coal*'s four-factor test, that the Trust and Lions Bridge's

---

[3] The Fourth Circuit looks to four factors

> to determine if a claimant has demonstrated evident partiality: (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding."

*ANR Coal*, 173 F.3d at 500.

partnership terminated four years before the arbitration and that Glasser's potential pecuniary benefit was nonexistent. *Id.* at 137-138. Further, it viewed Di Vincenzo and Glasser's connections as being "indirect" and "tenuous," even after considering Glasser's direct introduction of Di Vincenzo at the 2015 board meeting. *Id.* at 137. "Overall," it concluded, "a reasonable person would not have to conclude from the arbitrator's nondisclosure of prior connections with Di Vincenzo that he was partial toward either party." *Id.* at 138. Additionally, "[Glasser's] testimony does not indicate that the arbitrator's *non*disclosure, where he *was not* aware of the connections, would lead a reasonable person to conclude that he was biased or had improper motives." *Id*. at 138.[4]

## II. ANALYSIS

Garofalo appeals, claiming the Court of Appeals erred when it affirmed the circuit court's ruling that there was no evident partiality by Glasser. If an arbitrator knows about but does not "disclose information that might reasonably create an appearance or impression of bias," Garofolo argues, then the award must be vacated for "evident partiality." We disagree.

### A. The Plain Meaning of "Evident Partiality" in Code § 8.01-581.010(2)

Because the VUAA defines the parameters of judicial review of arbitration awards, "a circuit court's denial of an application to vacate an arbitration award under the [VUAA] presents a question of statutory interpretation, which we review de novo." *Meuse v. Henry*, 296 Va. 164, 180 (2018). We also note that Virginia public policy, as reflected in the VUAA, favors arbitration and the validity of agreements to arbitrate. *See TM Delmarva Power, L.L.C. v. NCP*

---

[4] The Court of Appeals also held that Di Vincenzo properly included her request for attorney fees in a responsive pleading and thus they should be awarded to her under Rule 3:25. *Garofolo*, 83 Va. App. at 139-40. Garofolo did not assign error to this holding on appeal to this Court, and we accordingly do not consider this holding below.

*of Va.*, *L.L.C.*, 263 Va. 116, 122-23 (2002).  Because of that policy choice made by the General Assembly, vacating an arbitration award is a legal remedy justified only by rare circumstances. *See Cotton Creek Circles, LLC v. San Luis Valley Water Co.*, 279 Va. 320, 324 (2010) ("[J]udicial review of an arbitration award under the Act is 'among the narrowest known to the law.'" (citation omitted)).

The VUAA sets out five exclusive grounds for vacating an arbitration award:

> 1. The award was procured by corruption, fraud or other undue means;
>
> 2. There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
>
> 3. The arbitrators exceeded their powers;
>
> 4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 8.01-581.04, in such a way as to substantially prejudice the rights of a party; or
>
> 5. There was no arbitration agreement and the issue was not adversely determined in proceedings under § 8.01-581.02 and the party did not participate in the arbitration hearing without raising the objection.

Code § 8.01-581.010.  As the cross-petitioner below, Garofalo bore the burden of establishing "evident partiality" to vacate the award.  *See Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153 (1995).

To discern the meaning of "evident partiality" as used in the VUAA, we must first look to the plain language of those words using well-known principles.  "When interpreting statutes, we must ascertain and give effect to the intention of the General Assembly." *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022) (cleaned up).  "We are bound by the plain language of

8

the statute 'unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Id.* at 483 (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)). We often consult general-purpose dictionaries to determine a statute's plain meaning. *See Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023); *see also Travelers Indem. Co. of Am. v. Portal Healthcare Sols.*, LLC, 35 F. Supp. 3d 765, 770 (E.D. Va. 2014) (citing examples of this Court turning first to dictionaries to determine plain meaning).

Consider the words "evident" and "partiality" separately. The first word, "evident," means "clear to the vision or understanding" and is synonymous with "manifest, patent, distinct, obvious, [and] apparent." *Evident*, Webster's Ninth New College Dictionary 430 (1983); *accord Evident*, Black's Law Dictionary 500 (1979) ("Clear to the understanding and satisfactory to the judgment; manifest; plain; obvious; conclusive. Noticeable; apparent to observation."). Evident denotes more than a conceivable or nebulous appearance of bias—it means an appearance that a person would recognize in a conclusive way. *See Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998) (defining evident as "direct, definite, and capable of demonstration"); *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 253 (3d Cir. 2013) ("The conclusion of bias must be ineluctable, the favorable treatment unilateral."). The second word, "partiality" (or "partial"), means "inclined to favor one party more than the other." *Partial*, Webster's Ninth New College Dictionary 858 (1983); *accord Partiality*, Webster's Third New International Dictionary 1646 (1993) ("the inclination to favor one side (as of a conflict or question)"). If disinterest is the norm for arbitrators, partiality would describe a deviation from that expectation.

Taken together, we read this phrase as allowing vacatur when an arbitrator's bias in favor of one party is clear or obvious to a reasonable person. "[M]ore than a vague appearance of

9

bias," a party must point to conduct that is "sufficiently obvious that a reasonable person would easily recognize it." *Freeman*, 709 F.3d at 253.  In addition, the subsequent phrase "by any arbitrator appointed as a neutral" further confirms that curtailing noticeable "bias" or "favoritism" is the aim of this subsection in the VUAA.  Code § 8.01-581.010(2).  After all, obvious bias by an arbitrator would necessarily imperil the fairness of the arbitration and taint any award ordered from the arbitration panel.  This understanding neatly tracks the ostensible legislative intent behind the VUAA:  The General Assembly sought to ensure arbitration would remain an impartial tribunal—because it is not a traditional court proceeding—by providing a judicial safety valve for vacating unjust awards.

Construing "evident partiality" as objectively obvious bias by arbitrators or neutrals is also consistent with the statutory context in which these terms appear.  Code § 8.01-581.010(2) contains other drastic, brazen conduct by arbitrators—"corruption," "misconduct prejudicing the rights of any party," "fraud"—as other grounds for vacating an award.  More than mere procedural irregularities, the grounds for vacatur in Code § 8.01-581.010(2) suggest severe misconduct by an arbitrator that would be apparent to a reviewing court.  *See Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 432 (2012) ("The maxim of *noscitur a sociis* provides that the meaning of doubtful words in a statute may be determined by reference to their association with related words and phrases.") (quoting *Andrews v. Ring*, 255 Va. 311, 319 (2003)); *cf. Cotton Creek Circles*, 279 Va. at 325 (holding that even serious interpretive errors are insufficient to show arbitrators exceeded their power—"arbitrators must egregiously depart from" their authority).  Other courts also acknowledge this high bar for vacatur based on "evident partiality."  *See, e.g.*, *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007) ("On its face, 'evident partiality' conveys a stern standard.");

10

*Crouch Constr. Co. v. Causey*, 747 S.E.2d 482, 488 (S.C. 2013) ("[T]o come within the statute's 'strong language' requiring a showing of "evident partiality," the undisclosed facts must be "powerfully suggestive of bias.") (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681 (7th Cir. 1983)).

Accordingly, we hold that a party seeking vacatur for evident partiality under Code § 8.01-581.010(2) must show that a reasonable person, knowing all the relevant facts, would conclude that the arbitrator's conduct signifies obvious bias against that party.

This standard requires objective evidence of conduct inconsistent with impartiality—not necessarily proof of the arbitrator's actual subjective bias, nor a presumption of bias from every party-arbitrator interaction. The inquiry is whether, viewed objectively, the circumstances would lead a reasonable person to conclude that the arbitrator was obviously biased. We emphasize that this is an exacting standard without rigid, bright lines. The many forms of arbitration and the varied relationships that may exist—whether industry-specific or between arbitrators, parties, and their attorneys—strongly counsel against a formulaic approach.

Two additional points warrant emphasis. First, the alleged acts, omissions, or (as here) nondisclosure by arbitrators must be material to serve as the basis for vacatur. And second, as the Fourth Circuit observed, "mere nondisclosure does not in itself justify vacatur." *ANR Coal*, 173 F.3d at 500. Rather, material nondisclosure concerns information that would lead a reasonable person to conclude that the arbitrator was unable to remain impartial throughout the proceeding. For instance, engaging an arbitrator who knows of, but does not disclose, a substantial financial relationship with a party would lead a reasonable person to conclude that the

11

arbitrator was evidently partial. Brief, inconsequential, or remote relationships would not, without more, establish the obvious bias that our standard requires.[5]

### B. This Case Does Not Reflect "Evident Partiality"

Applying this standard, Glasser was not evidently partial toward Di Vincenzo. We hold that Glasser's prior contacts with Di Vincenzo were far too remote, attenuated, and immaterial to constitute "evident partiality" within the meaning of Code § 8.01-581.010(2), and the nondisclosure of those contacts does not warrant vacatur.

Garofalo focuses on two undisclosed relationships that, he claims, show evident partiality: (1) Glasser's prior business interactions with Di Vincenzo and (2) the "contractual and financial relationship" between Old Point and Di Vincenzo's company. Garofalo contends that Glasser's admission at trial that his nondisclosures created an appearance of partiality is itself sufficient to establish evident partiality. In support of this argument, Garofalo urges us to adopt a standard akin to the "reasonable impression of bias" test used by some federal courts of appeals.[6] S*ee, e.g.*, *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir. 1994).

---

[5] Though we decline to adopt *ANR Coal* and its factor test, unlike both courts below, we recognize that decision's instructive value in reaching our holding today. We further recognize that our understanding of the term "evident partiality" comports with the majority of other jurisdictions' respective interpretations. *See, e.g.*, *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984); *Crouch Constr. Co.*, 747 S.E.2d at 489 (requiring "the party seeking vacatur to 'demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration'") (quoting *ANR Coal*, 173 F.3d at 493).

[6] Garofalo also contends that *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 (1968), established "evident partiality" as a term of art under the FAA with a settled meaning that the VUAA imported wholesale. We are not persuaded for two reasons. First, *Commonwealth Coatings* does not control our interpretation of Virginia law. When a uniform act becomes part of the Code, it is interpreted first according to Virginia law; other jurisdictions' constructions are persuasive but not controlling. *Cf. McKeithen v. City of Richmond*, 302 Va. 422, 440 n.7 (2023) ("We thus view the federal precedents as persuasive, but not binding, authority."). Even so, *Commonwealth Coatings* is "neither dispositive nor persuasive because" it was "decided prior to the enactment of Code § 8.01-581.010." *Lackman v. Long & Foster Real Est., Inc.*, 266

First, the 2015 Southside Regional board meeting, where Glasser introduced Di Vincenzo, does not establish any sort of prior relationship. The meeting minutes state that "Glasser introduced Jayne DiVincenzo [sic], AIF, CIP, Five Star Wealth Advisor of Lions Bridge Financial." The minutes also describe Di Vincenzo's subsequent presentation. This introduction is not one that would cause an objective observer to infer favoritism; it would not even give rise to an appearance of impropriety or a slight business relationship. Rather, this interaction reflects typical boardroom formalities: Glasser was reading a prepared introduction for one of several guest presenters at the board meeting. The 2014 interaction between Glasser and Di Vincenzo reflects similar boardroom niceties after the Old Point-Lions Bridge venture commenced. From the meeting minutes: "Glasser introduced Gene Jordan, Old Point Trust Department. Mr. Jordan introduced [Di Vincenzo and another] of Lions Bridge Financial as Old Point National Bank's newest strategic alliance." A reasonable person would not view this interaction as even suggestive of bias, nor would the failure to disclose it signify obvious bias by Glasser toward Di Vincenzo.

Second, the business connection between Glasser, Old Point, Lions Bridge, and Di Vincenzo is *de minimis* in our view. Recall Glasser's relationship vis-à-vis Old Point with Di Vincenzo's company, Lions Bridge. The Trust—a subsidiary of Old Point—partnered with Lions Bridge five years before the arbitration commenced. Though Glasser was on the board of

Va. 20, 24 (2003). We therefore construe evident partiality according to its plain meaning under well-settled principles of statutory interpretation. Second, even if *Commonwealth Coatings* were relevant, it does not establish the clear "term of art" that Garofalo claims. Courts remain divided over that plurality opinion's meaning and application. *See Ploetz v. Morgan Stanley Smith Barney LLC*, 894 F.3d 894, 898 (8th Cir. 2018) (noting an "absence of a consensus on the meaning of 'evident partiality' amongst federal courts"). We are not persuaded that the General Assembly intended to adopt a specific and contested federal formulation of the FAA when it enacted the VUAA in 1986.

Old Point (and the Bank) at that time, the record does not show Glasser's involvement in negotiating or terminating the Lions Bridge partnership. Further, the partnership disbanded after just over a year, generating only marginal success—about $8,000 in revenue for Old Point.

In sum, the facts established at trial do not support an objective finding of evident partiality. The trial court credited Glasser's testimony that he did not remember the relationship, and we are bound to that determination. *See Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631 (2002). Glasser repeatedly stated that he was unaware of Di Vincenzo or her company before the arbitration and recognized his imperfect disclosures. Put simply, Glasser's imperfect disclosures and inability at the time of the arbitration to recall past interactions would not lead a reasonable person to conclude that he harbored obvious bias in favor of Di Vincenzo. The fleeting, formal introductions at board meetings and the attenuated connection to a defunct business partnership fall well short of the material nondisclosures that would suggest evident partiality.

Lastly, the FINRA recusal rules do not provide an *independent* basis for vacatur. To be sure, "arbitration is a creature of contract." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 570 (1960). And Glasser certainly had a duty to make thorough, good-faith, and continuing disclosures under the FINRA rules that Di Vincenzo and Garofalo agreed to in the Asset Purchase Agreement. While parties may set their own high bars for disclosure for their chosen arbitrators,[7] an arbitration agency's rules do not control the vacatur inquiry undertaken by a court. *See ANR Coal*, 173 F.3d at 499. Rather, courts must ask whether an arbitrator's conduct rises to the level of evident partiality and requires disturbing an otherwise valid

---

[7] For instance, the FINRA rules prescribe that "arbitrators must be impartial in both *appearance* and in fact." (emphasis added).

arbitration award. Here, Glasser admitted his failure to investigate all (even remote) conflicts of interest more stringently through Old Point. That failure might bear on whether Glasser needed to recuse himself from the panel, but it does not categorically answer whether a reasonable person would conclude that Glasser was obviously biased against Garofalo. When a vacatur petition reaches the circuit court, the VUAA's statutory bases are solely operative, not the parties' agreed-upon rules. Accordingly, the trial court did not err in denying Garofalo's petition to vacate the arbitration award.

Vacatur is an "extraordinary remedy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). We noted earlier that, by the General Assembly's design, judicial review of arbitration awards is exceedingly narrow. That design, and our holding today, discourage sour-grapes, post-hoc forms of vacatur petitions of valid arbitration awards. *See Cotton Creek Circles*, 279 Va. at 325.

> In reaching this conclusion, we emphasize that the grounds for vacatur provided in the Act . . . do not permit a court to overturn an arbitration award based merely on a party's disagreement with the arbitrators' decision. "[P]arties may not seek a 'second bite at the apple' simply because they desire a different outcome."

*Id*. (citations omitted). Like other jurisdictions, we remain wary of the scenario where "the losing party to every arbitration . . . conduct[s] a background investigation of each of the arbitrators to uncover evidence of a former relationship with the adversary." *Merit Ins. Co.*, 714 F.2d at 683.

At the same time, our exacting standard does not insulate the arbitration process in the event of material nondisclosures by an arbitrator. Disclosure has important aims in arbitration: it "not only enhances the actual and apparent fairness of the arbitral process, but it helps ensure that that process will be final, rather than extended by proceedings like this one." *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 78 (2d Cir. 2012). As the

15

Uniform Arbitration Act's drafters recognized, "[t]he competing goals of party choice, desired expertise and impartiality must be balanced by giving parties access to all information which might reasonably affect the arbitrator's partiality." UNIF. ARB. ACT § 12 cmt. ¶ 1 (NAT'L CONF. COMM'RS ON UNIF. STATE L. 2000) (citations omitted).

III. CONCLUSION

For the above reasons, we affirm the judgment of the Court of Appeals. We further remand this case to the Court of Appeals for disposition consistent with Part II.C in its opinion below in *Garofalo v. Di Vincenzo*, 83 Va. App. 118 (2024), regarding attorney fees.

*Affirmed and remanded.*