48 F.3d 125
 148 L.R.R.M. (BNA) 2520, 129 Lab.Cas. P 11,282
 CONSOLIDATION COAL COMPANY, a corporation, Plaintiff-Appellee,
v.
LOCAL 1643, UNITED MINE WORKERS OF AMERICA; District 17,
United Mine Workers of America, unincorporated
labor associations, Defendants-Appellants.
 No. 94-1726.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1994.
Decided Feb. 16, 1995.
 
 ARGUED: Sarah J. Starrett, United Mine Workers of America, Washington, DC, for appellants. Robert Mason Steptoe, Jr., Steptoe & Johnson, Clarksburg, WV, for appellee. ON BRIEF: Charles F. Donnelly, Hostler Law Offices, Charleston, WV, for appellants. Carolyn A. Wade, John R. Merinar, Jr., Steptoe & Johnson, Clarksburg, WV, for appellee.
 Before RUSSELL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 Reversed and remanded by published opinion. Judge RUSSELL wrote the opinion, in which Judge MICHAEL and Senior Judge PHILLIPS joined.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Defendants-Appellants Local 1643, United Mine Workers of America (UMWA) and District 31, UMWA (collectively "the Union") appeal the district court's acceptance in whole of a Magistrate Judge's recommendation to vacate an arbitrator's decision in their favor and against Plaintiff-Appellee Consolidation Coal Company (Consol) because the arbitrator was biased. We reverse and remand the vacation of the award.
 
 I.
 
 2
 This dispute arises from a decision by Arbitrator Lawrence Roberts issued September 27, 1991, sustaining the Union's grievance that Consol had violated the terms of the National Bituminous Coal Wage Agreement Act of 1988 (Wage Agreement) by contracting out the manufacture of a coal belt transfer. On December 23, 1991, Consol filed this action in the Northern District of West Virginia, initially alleging that the award failed to draw its essence from the Wage Agreement. Both parties filed summary judgment motions.
 
 
 3
 On December 1, 1992, Consol filed an amended complaint alleging that Arbitrator Roberts' brother, Thomas Rabbitt Zajac, was employed by the International UMWA, and that this relationship and Arbitrator Roberts' failure to disclose it resulted in a biased award.[1] Since May 1989, Zajac had been the International Representative for Health and Safety for Districts 4 and 5, based in Pennsylvania. He is not a UMWA elected official, has no responsibilities for contract matters between the Union and the Bituminous Coal Operators Association (BCOA), and has not been involved in an arbitration case on behalf of the International UMWA since 1982. In the past, Zajac and Arbitrator Roberts have lived together and have jointly owned a laundromat.
 
 
 4
 Arbitrator Roberts was selected as an arbitrator pursuant to the Wage Agreement and procedures adopted by the International UMWA and the BCOA, who nominate potential arbitrators to serve on a panel of arbitrators for each UMWA District. Nominees submit a questionnaire entitled "Prescribed Resume" detailing their education, arbitration experience, and qualifications. Although this form asks questions regarding a nominee's involvement with coal companies and the UMWA, and whether the nominee's family members have any economic interest in any coal or coal-related companies, it does not inquire whether any of the nominee's family members work for the UMWA. See Joint Appendix (JA) at 118-19 (Arbitrator Roberts' Prescribed Resume dated March 3, 1988). Each side also can investigate the nominee before making final selections for the panels and can strike a certain number of nominees. Thereafter, the International UMWA and the BCOA can remove an arbitrator from a panel by mutual consent.
 
 
 5
 The Coal Arbitration Service (CAS) administers arbitration matters. Panel members are not bound by the codes of the American Arbitration Association, the Federal Mediation Conciliation Services, or any other outside organization. Recusal, disclosure, and other ethical issues are left to the discretion of each arbitrator. In 1988, Arbitrator Roberts was selected to serve as a coal industry arbitrator for District 31.
 
 
 6
 In its amended Complaint, Consol also sought to have Arbitrator Roberts removed from the panel for District 31. On February 3, 1993, the district court referred this matter to Magistrate Judge David Core. On November 10, 1993, the Union filed a motion to dismiss Consol's amended complaint for failure to join the BCOA and Arbitrator Roberts as indispensable parties. The Union's motion and supporting memorandum did not address the issue of bias raised by Consol. On November 24, 1993, Consol withdrew the portion of its amended complaint to disqualify Arbitrator Roberts from the panel for District 31 and argued that this rendered the Union's motion to dismiss moot.
 
 
 7
 On December 7, 1993, the Magistrate Judge issued his Proposed Findings of Fact and Recommendation for Disposition and recommended granting summary judgment in favor of Consol to vacate the award because of arbitrator bias.[2] The Magistrate Judge found that Consol had conclusively established the sibling relationship between Arbitrator Roberts and Zajac and Arbitrator Roberts' failure to disclose the relationship.[3] The Magistrate Judge also denied the Union's motion to dismiss the amended complaint because Consol's withdrawal of its request that Arbitrator Roberts be removed from the panel had rendered the issue moot. On December 8, 1993, the Magistrate reiterated his findings by issuing an Amended Proposed Findings of Facts and Recommendation for Disposition after receiving the Union's reply to Consol's response to the Union's motion to dismiss.
 
 
 8
 On December 20, 1993, the Union filed objections to the Magistrate's findings, including evidence summarizing Arbitrator Roberts' record. In 66 coal industry decisions overall, the Union won 30, lost 29, split 5, and settled 2 before a hearing. In 19 cases between Consol and District 31, the Union won 7, lost 10, split 1, and remanded 1. The Union also submitted the affidavits of Zajac, who provided information regarding his position with the International UMWA and his relationship with his brother, and Steven Winsor Lindner, Coadministrator of the CAS on behalf of the UMWA, who described the arbitrator selection process.
 
 
 9
 On March 28, 1994, the district court accepted in whole the Magistrate's recommended disposition. The court noted that, after its own de novo review of the entire record, the Union's objections and additional evidence failed to raise any issues that the Magistrate had not thoroughly considered. JA at 57. The Union moved for reconsideration and/or a new trial, which the district court denied on May 12, 1994.
 
 II.
 
 10
 This Court has jurisdiction pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. We review de novo a district court's decision to vacate an arbitration award. Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 145 (4th Cir.1993). The district court's underlying factual finding that Arbitrator Roberts was biased, however, is subject to review under the clearly erroneous standard. Id. A finding is clearly erroneous if no evidence in the record supports it or "when, even though there is some evidence to support the finding, the reviewing court, on review of the record, is left with a definite and firm conviction that a mistake has been made in the finding." Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir.1984). Furthermore, the clearly erroneous rule does not protect findings "made on the basis of the application of incorrect legal standards." Id.
 
 III.
 
 11
 Although the Federal Arbitration Act (FAA) "does not apply to disputes stemming from collective bargaining agreements," Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1067 (4th Cir.1993) (construing 9 U.S.C. Sec. 1), courts have applied FAA evident partiality standards to arbitration awards involving collective bargaining agreements. E.g., Apperson v. Fleet Carrier Corp., 879 F.2d 1344 (6th Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990); Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds, 748 F.2d 79 (2d Cir.1984). Under section 10 of the FAA, a court may vacate an arbitrator's award "[w]here there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. Sec. 10(a)(2). We find it appropriate to apply to this case the evident partiality standard for vacation developed by FAA case law.
 
 
 12
 To demonstrate evident partiality under the FAA, the party seeking vacation has the burden of proving "that 'a reasonable person would have to conclude that an arbitrator was partial' to the other party to the arbitration." Peoples, 991 F.2d at 146 (quoting Apperson, 879 F.2d at 1358). This reasonable person standard requires a showing of something more than the "appearance of bias," but not the "insurmountable" standard of "proof of actual bias." Morelite, 748 F.2d at 84. This Court has reasoned that "[t]he alleged partiality must be 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.' " Peoples, 991 F.2d at 146 (quoting Health Servs. Management Corp. v. Hughes, 975 F.2d 1253, 1264 (7th Cir.1992)). Furthermore, the party asserting evident partiality "must establish specific facts that indicate improper motives on the part of the arbitrator." Peoples, 991 F.2d at 146.
 
 
 13
 The Magistrate Judge and the district court agreed with Consol that Arbitrator Roberts' failure to disclose the sibling relationship and the relationship itself were sufficient to mandate vacating the award. The Magistrate Judge relied on Morelite to support his conclusion that "reasonable people would conclude ... that there is strong evidence of partiality by Arbitrator Roberts." JA at 41-43. The Magistrate apparently reasoned that because Arbitrator Roberts' sibling relationship was analogous to the father-son relationship in Morelite, Consol did not need to offer any evidence beyond the mere existence of the relationship and its nondisclosure.
 
 
 14
 In a supplemental filing to this Court, the Union directs our attention to a recent opinion involving a similar challenge to an award in favor of the UMWA by Arbitrator Roberts on the basis of bias arising from his brother's employment with the International UMWA. In Hobet Mining, Inc. v. International Union, UMWA, 877 F.Supp. 1011 (S.D.W.Va.1994), Judge John T. Copenhaver, Jr., reviewed the case law on evident partiality, distinguished Morelite, considered the interests and motives of Arbitrator Roberts and his brother, and enforced an award in favor of the union.
 
 
 15
 Judge Copenhaver effectively distinguished Morelite, on two grounds. First, he reasoned that, without any further evidence, a court should not assume the same degree of loyalty and partiality in a sibling relationship that it can assume in a father-son relationship, which was at issue in Morelite. He noted that even Morelite warns that any "list of familial or other relationships that will result in the per se vacation of an arbitration award ... would most likely be very short." Hobet Mining, 877 F.Supp. at 1020 (quoting Morelite, 748 F.2d at 85). Second, in Morelite the arbitrator's father was the Vice-President and later General President of an international union, Morelite, 748 F.2d at 81, whereas Roberts' brother merely worked for the International UMWA in another state. We conclude that, given these distinctions, the Magistrate Judge and district court's finding of per se bias was clearly erroneous and that Consol needed to offer more evidence of partiality and improper motive on the part of Arbitrator Roberts in order to have the award vacated.
 
 
 16
 We adopt Judge Copenhaver's particularly instructive analysis in Hobet Mining regarding what constitutes evident partiality. He framed the inquiry as examining "the nature of the relationship and its connection to the arbitration dispute to determine whether [the company] has met its burden of proving direct and definite partiality or specific facts indicating improper motive" by Arbitrator Roberts. Hobet Mining, 877 F.Supp. at 1021. He listed the following factors to assist the determination of evident partiality: (1) any personal interest, pecuniary or otherwise, the arbitrator has in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of the relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding. Hobet Mining, 877 F.Supp. 1021 (citing Sanford Home for Adults v. Local 6, IFHP, 665 F.Supp. 312, 320 (S.D.N.Y.1987) (supporting factors 1, 2, 4), Austin South I, Ltd. v. Barton-Malow Co., 799 F.Supp. 1135, 1142 (M.D. Fla.1992) (supporting factors 1, 4), and Local 814, IBT v. J & B Sys. Installers & Moving, Inc., 878 F.2d 38, 40 (2d Cir.1989) (supporting factor 3)).
 
 
 17
 Judge Copenhaver concluded that Arbitrator Roberts had only an indirect relationship to the party in the arbitration proceeding and that the relationship had no connection with the issues submitted to arbitration.[4] Hobet Mining, 877 F.Supp. at 1021-22. Furthermore, neither Arbitrator Roberts nor his brother (or the union members he represented on health and safety matters) had any discernable interest in the outcome of the proceeding. Judge Copenhaver also noted that "[t]he absence of evidence demonstrating improper motive is accentuated by the uncontroverted showing that in disputes involving District 17, Arbitrator Roberts has a history of ruling against the Union more than half the time." Hobet Mining, 877 F.Supp. at 1022. He concluded that the claim of partiality based solely on the existence of the sibling relationship "is at best remote, uncertain and speculative." Id.[5]
 
 
 18
 Following Judge Copenhaver's thorough and well-reasoned opinion in Hobet Mining, we hold that the Magistrate Judge and district court's finding of per se bias was clearly erroneous. First, as noted above, Morelite is clearly distinguishable from this case and we are reluctant to expand the list of relationships requiring per se vacation for bias. Second, Consol failed to demonstrate any partiality or improper motive on the part of Arbitrator Roberts or that he and his brother had any interest in the outcome of the dispute arbitrated. Finally, the Union's statistics indicate that Arbitrator Roberts decides in favor of the coal companies about as often as he does for the Union. Although not conclusive proof, these statistics certainly suggest the absence of evident partiality by Arbitrator Roberts.
 
 
 19
 Therefore, we reverse and remand the district court's vacation of the award based on bias. However, because the Magistrate Judge and the district court specifically did not rule on the other grounds Consol initially offered to defeat the award, Consol may proceed with those claims.[6]IV.
 
 
 20
 For the foregoing reasons, we reverse and remand the district court's vacation of the arbitration award in favor of the Union.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 [1]
 Consol claims that it first became aware of this sibling relationship on or about March 4, 1992, as the result of a Uniontown, Pennsylvania Herald-Standard newspaper article published March 24, 1992. Consol does not explain the discrepancy between these dates, which we presume involves a typographical error. The Union contends that Consol's Director of Contract Administration, Paul Reck, had been aware of the relationship as early as 1987-88
 
 
 [2]
 Because the finding of bias was dispositive, the Magistrate never reached the issue of whether the award had drawn its essence from the Wage Agreement
 
 
 [3]
 This finding was necessitated by the Union's denial of any knowledge of the existence of the relationship in its response to Consol's request for admissions. JA at 31
 
 
 [4]
 Hobet Mining also dealt with the contracting out of union work
 
 
 [5]
 Judge Copenhaver also noted that although Arbitrator Roberts was a member of the American Arbitration Association (AAA), he was not required under the Wage Agreement or the CAS to abide by the disclosure requirements of the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes (the Code). Hobet Mining, 877 F.Supp. at 1019-20. Furthermore, Hobet Mining, like Consol, could have made inquiries, through the BCOA, about Roberts' family relations beyond the questions asked in the Prescribed Resume. Id., at 1020. Thus, Hobet Mining's placing of the fault of nondisclosure on Roberts "suggests that they are simply dissatisfied with the award." Id. Even if Roberts were required to disclose the relationship, Judge Copenhaver reasoned that nondisclosure would have amounted to a mere technical violation still requiring a showing of evident partiality. Id., at 1020
 The Magistrate Judge did not discuss mandatory disclosure under the AAA or the Code as a grounds for his finding of bias, but Consol makes this argument to this Court. We agree with Judge Copenhaver that Roberts' nondisclosure constituted at most a technical violation that still required Consol to demonstrate evident partiality. Thus, we need not determine whether the Code requires Roberts to disclose the relationship.
 
 
 [6]
 The Union alternatively raises the issue of whether the granting of summary judgment contemporaneously with a decision on a motion to dismiss precluded the Union from presenting a meritorious defense to the arbitral bias claim. Our decision to reverse and remand the vacation of the award renders this procedural argument moot