# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-028**

**Filing Date: December 24, 2019**

**Nos. A-1-CA-36308 & A-1-CA-36309**
**(consolidated for purpose of opinion)**

**KAREN L. ROGERS,**

Petitioner-Appellee,

v.

**RED BOOTS INVESTMENTS, L.P.,**

Respondent-Appellant.

**and**

**KAREN L. ROGERS,**

Petitioner-Appellee,

v.

**RED BOOTS INVESTMENTS, L.P.,**

Respondent

_____

**DAVID S. SMOAK,**

Arbitrator-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Certiorari Denied, March 9, 2020, No. S-1-SC-38108; Cross-Petition Denied, March 9, 2020, No. S-1-SC-38108.  Released for Publication June 23, 2020.

Holland & Hart LLP
Larry J. Montano

Charlie S. Baser
Santa Fe, NM

for Appellee

Brant & Hunt, Attorneys
John M. Brant
Albuquerque, NM

for Respondent-Appellant

Hatch Law Firm, LLC
Stanley N. Hatch
Jesse C. Hatch
Albuquerque, NM

for Arbitrator-Appellant

**OPINION**

**VARGAS, Judge.**

**{1}** Red Boots Investments, L.P. (Red Boots) and David Smoak (collectively, Appellants) filed separate appeals, appealing the district court's orders vacating an arbitration award[1] issued by Smoak in favor of Red Boots, disqualifying David Smoak as arbitrator, and disqualifying Stanley Hatch as legal counsel to the arbitrator. Because both appeals raise several identical issues, we consolidate the appeals for decision.

**{2}** On appeal, Appellants' raise the following issues: (1) whether Smoak, as the arbitrator, has the right to appeal the district court's orders; (2) whether the district court erred in vacating Smoak's arbitration award for "evident partiality," under the New Mexico Uniform Arbitration Act (the NMUAA), NMSA 1978, §§ 44-7A-1 to -32 (2001); and, (3) whether the district court erred in prospectively disqualifying Smoak from serving as an arbitrator of future disputes between the parties. We affirm.

## I.    BACKGROUND

**{3}** Bill Rogers (Husband) and Karen Rogers (Wife) dissolved their marriage by stipulated judgment (the Stipulated Judgment) entered by a California court. Pursuant to the Stipulated Judgment, two trusts for the benefit of Husband's and Wife's minor children (collectively, the Trusts) were ordered to pay child support to Wife. To effectuate the Stipulated Judgment, Husband and Wife formed Red Boots to hold Husband's and Wife's marital assets and distribute those assets at a rate proportionate

---

[1] The parties to these appeals have engaged in several arbitration proceedings prior to filing these appeals. These appeals are limited to matters related to the arbitration award entered in favor of Red Boots and against Karen Rogers, dated May 5, 2016. This award is referred to as the "RB Award II" throughout the opinion.

to their respective interests in the partnership. Husband served as the managing member of both Red Boots and Red Boots' general partner, TexWest, LLC.

**{4}**     Following a dispute over the implementation of the Stipulated Judgment and the management of Red Boots, Wife sued Husband in California and Texas. Much of the property involved in the dispute was located in New Mexico and owned by RSF Land and Cattle Company, LLC (RSF), for which Husband served as managing member and Smoak served as president. Husband and Wife agreed to mediate their disputes, with Smoak serving as mediator and Hatch as Smoak's attorney. Husband and Wife reached a preliminary settlement on September 11, 2008, but when a dispute arose regarding the terms of the settlement, arbitration was scheduled. Before the arbitration was commenced, Husband and Wife resolved their disputes and executed a settlement agreement (the Settlement Agreement) between themselves, Red Boots, the Trusts, RSF, and Smoak (collectively, the Parties). Following the execution of the Settlement Agreement, the Parties filed this action in district court, seeking an order confirming the Settlement Agreement, which the Parties presented to the district court as an arbitration award. The district court confirmed the arbitration award on May 8, 2009.

**{5}**     The Settlement Agreement required the Parties to submit all disputes or claims arising from "the operations of Red Boots, the interpretation of the Red Boots' partnership, the interpretation of the Stipulated Judgment, and the activities of the general partner of Red Boots" to an escalating three-step process: (1) informal discussions; (2) mediation; and (3) "final and binding" arbitration. The Settlement Agreement provided that the mediator would also serve as the arbitrator if mediation was unsuccessful, and stated that any necessary arbitration is governed by New Mexico law. Paragraph 24 of the Settlement Agreement provided that none of the Parties "shall make any comment, statement, or representation to the guardian ad litem, [the California court] or any other court of competent jurisdiction contrary to the established terms of this Settlement Agreement[,]" and that violation of this provision would result in the mediator or arbitrator ordering "payment of reasonable costs, attorney[] fees, and expenses incurred by the other Litigating Parties[.]"

**{6}**     The Settlement Agreement designated the possible mediators and, thus, arbitrators in order of preference as Smoak, Hatch, Ben M. Allen, and George Bravante. The Parties noted in the Settlement Agreement that Smoak disclosed his role as the president and a member of RSF, and that because Husband was the managing member of RSF, Smoak "may have an interest in the resolution of the disputes between the Parties and may be susceptible to influence by [Husband]." The Settlement Agreement also recognized that Hatch served as RSF's legal counsel and "may be susceptible to influence by [Husband]" because of Husband's role as the managing member of RSF. Nevertheless, the Parties "voluntarily appointed" Smoak to act as mediator with Hatch acting as Smoak's legal counsel, and released and discharged Smoak and Hatch from all claims, complaints, liability, loss, or damage resulting from mediation, the Settlement Agreement, or any decisions by Smoak or Hatch relating to the mediation or the Settlement Agreement. Smoak and Hatch nonetheless agreed "that

they will in any future mediation or arbitration take all reasonable steps and act in good faith to be neutral and fair to all [P]arties."

**{7}** The present case arises from separate, but related, arbitration proceedings conducted pursuant to the terms of the Settlement Agreement. As such, we set forth the relevant factual and procedural backgrounds of each arbitration proceeding leading up to the case at bar.[2]

## A.   The Trusts Arbitration

**{8}** After the Trusts failed to make certain child support payments to Wife as required by the Settlement Agreement, Wife sent a letter to Hatch, as counsel for the Trusts, demanding immediate payment. Hatch wrote to Wife, demanding mediation of the disputes she raised in her letter. In response, Wife wrote that she was willing to participate in mediation provided that "[a]n independent and neutral mediator shall be selected by agreement of the parties or if the parties cannot agree, the parties shall ask for such a mediator to be appointed by the [district c]ourt."

**{9}** Due to the unavailability of the other possible mediators, Bravante was designated in accordance with the Settlement Agreement to resolve their dispute. Wife filed a motion seeking to reopen the district court litigation, remove Bravante as the mediator, and appoint a neutral mediator. The district court denied Wife's motion to remove Bravante and appoint a neutral arbitrator, ordered the parties to mediate the dispute, and appointed Bravante as the mediator. Following unsuccessful mediation, Bravante withdrew for health reasons and the district court appointed Bruce Hall as the arbitrator.

**{10}** During arbitration, the Trusts raised several counterclaims against Wife and argued Wife violated Paragraph 24 of the Settlement Agreement by filing her motion to remove Bravante in district court and "making comments, statements, and/or representations to the [district c]ourt." Hall entered an arbitration award in Wife's favor (Trusts Award) on February 29, 2012, concluding the Trusts breached the Settlement Agreement, dismissing the Trusts counterclaims, and rejecting the Trusts' argument that Wife's conduct breached "any contractual obligation under the Settlement Agreement." The district court confirmed the Trusts Award.

## B.   Red Boots Arbitration I

**{11}** During the first arbitration between Wife and Red Boots (RB Arbitration I), Smoak was appointed to serve as the arbitrator and began the process of scheduling the arbitration on May 22, 2012. On June 28, 2012, Wife filed (1) an application in the district court to temporarily restrain and preliminarily enjoin Smoak from conducting an arbitration in the RB Arbitration I matter, and (2) a motion to permanently disqualify

---

2Although the awards in the Trusts Arbitration and those we identify herein to be RB Arbitrations I, III, IV and V are not the subject of this appeal, we nonetheless set forth the relevant background of each of the arbitrations to provide the necessary context for the appealed district court orders.

Smoak from serving as mediator or arbitrator for any disputes under the Settlement Agreement and to appoint a neutral arbitrator for the RB Arbitration I matter. To support her motion to permanently disqualify Smoak, Wife provided an affidavit explaining that she and Smoak spoke shortly after Hall entered the Trusts Award. Wife stated that Smoak told her during that conversation "that he thought . . . Hall was wrong in not penalizing [Wife] for the [motion to remove Bravante as the mediator] and that . . . Hall should have awarded attorney fees against [Wife]." After Red Boots submitted its list of issues for arbitration, which included Wife's "violation of the Settlement Agreement's Alternative Dispute Resolution provisions against going to court which led to . . . large amounts of Red Boots', Tex[W]est's and [Husband's] [sic] time and efforts to defend, and . . . large amounts of the time and efforts of others to defend[,]" Smoak notified Red Boots and Wife that the issues within the scope of arbitration included "[d]isputes concerning the violation of the provisions of [Paragraph] 24 of the Settlement Agreement as it relates to present court actions initiated by [Wife]."

{12} The district court denied Wife's motion to disqualify Smoak in the RB Arbitration I, and denied her motion to permanently disqualify Smoak "as not being ripe for decision." Addressing the scope of the upcoming RB Arbitration I, the district court limited the arbitrability of the Paragraph 24 issue:

> Regarding the scope of the issues for the [RB A]rbitration [I], with respect to any issue relating to reasonable costs, attorney fees, and expenses which might be sought against [Wife] pursuant to [Paragraph] 24 of the . . . Settlement Agreement . . ., the arbitration is limited to *considering only costs, attorney fees and expenses related to disputes between* [*Wife*] *and Red Boots . . . beginning with the* [*application to temporarily restrain and preliminarily enjoin Smoak*] *filed in* [*the district court on*] *June 28, 2012*[,] *and the* [*motion to disqualify Smoak and appoint a neutral arbitrator*] *also filed June 28, 2012*. Nothing contained herein suggests whether or not any costs, attorney fees or expenses should be awarded. (Emphasis added.)

Neither Red Boots nor Smoak filed a motion to reconsider the district court's order and neither appealed the order.

{13} Following the RB Arbitration I, Smoak issued the RB Award I which addressed Red Boots' claim for damages against Wife under Paragraph 24. After acknowledging the district court's limitation concerning the costs, fees and expenses that could be sought against Wife, Smoak concluded that Paragraph 24 was and would "continue to be a major issue for the parties[,]" that it "beg[ged] to be addressed in detail and directly[,]" and that "[i]t was not raised or responded to in the [district] court pleadings." Notwithstanding the district court's order, Smoak then awarded litigation costs dating back to September 12, 2008, against Wife in conflict with that order, concluding:

> [Wife's] court actions with respect to the present arbitration constitute a single violation of [Paragraph] 24 harming Red Boots, [TexWest], and the

member of [TexWest]. Thus, [t]he damages to be awarded in favor of Red Boots as a result of [Wife's] violation of [Paragraph] 24 in this matter are the payment of reasonable litigation costs incurred by Red Boots in disputes with [Wife] since the closing of the original mediation on September 12, 2008. . . . The litigation costs incurred by Red Boots from September of 2008 through June of 2012 amount to $730,173.58.

In his summary of the decision and award, Smoak stated, "Red Boots is awarded damages for [Wife's] breach of the Settlement Agreement under [Paragraph] 24 in the amount of $730,173.58 plus an amount equal to the costs incurred in this dispute after June 30, 2012." Wife filed a motion to vacate RB Award I. Finding Wife's motion to be untimely, the district court denied Wife's motion and confirmed RB Award I.

## C.     RB Arbitrations II, III, IV, and V

**{14}**    In 2013 Red Boots and Wife engaged in the second Red Boots Arbitration (RB Arbitration II). On June 26, 2013, Wife filed a motion in district court to join Smoak and RSF as parties to the arbitration and to join certain issues to the RB Arbitration II. The district court denied this motion. On November 7, 2013, Wife filed an application in the district court to temporarily restrain and preliminarily enjoin Smoak from conducting the RB Arbitration II. The district court orally vacated the arbitration scheduled for later that month, but did not rule on Wife's application. The RB Arbitration II was subsequently rescheduled and Smoak entered an arbitration award (RB Award II). In the RB Award II, Smoak again concluded Wife had violated Paragraph 24, this time by filing her untimely motion to vacate the RB Award I and by responding to Smoak's motion to compel payment of fees related to the RB Arbitration I because it "contained substantive statements and representations contrary to the established terms of the Settlement Agreement." Smoak awarded Red Boots $1,250,000 for each of these two violations. Wife filed a motion to vacate the RB Award II.

**{15}**    In early 2015, Red Boots and Wife engaged in a third arbitration proceeding (RB Arbitration III). On May 28, 2015, Wife filed an application in the district court to temporarily restrain and preliminarily enjoin Smoak from conducting the RB Arbitration III. Smoak entered an arbitration award in this proceeding on the following day (RB Award III), again concluding Wife was liable to Red Boots for violating Paragraph 24 of the Settlement Agreement, this time pointing to "her filings on June [26], 2013, [to join parties and issues] and November 7, 2013[, to temporarily restrain and enjoin Smoak.]" Smoak awarded Red Boots damages in the amount of $850,000. In December 2015, the district court denied both of Wife's applications. Red Boots filed a motion to confirm RB Award III. The district confirmed the RB Award III.

**{16}**    Following a fourth arbitration between Red Boots and Wife, (RB Arbitration IV) Smoak entered the RB Award IV, concluding that Wife's "filings in conjunction with the [a]pplication for [a temporary restraining order] relating to the [RB Arbitration III] breached the provisions of [Paragraph] 24[,]" and that such breach entitled Red Boots to $1,320,000 in damages. The district court vacated RB Award IV, but deferred ruling on

Red Boots' and Smoak's motions to reconsider the vacatur pending the outcome of these appeals.

**{17}**   During a fifth arbitration between Red Boots and Wife (RB Arbitration V), Wife filed (1) a motion to appoint a different arbitrator and (2) an application to temporarily restrain and preliminarily enjoin Smoak from mediating or arbitrating. In its order denying Wife's application for a temporary restraining order and preliminary injunction, filed on October 21, 2016, the district court nevertheless cautioned Smoak not to proceed with arbitration pending the outcome of Wife's motion to appoint a different arbitrator, stating:

> An arbitrator's refusal to postpone a hearing upon a showing of sufficient cause is justification for vacating an award. [*See*] . . . § 44-7A-24(a)(3). . . . Conducting further arbitration proceedings while there is a pending motion before this Court to appoint a different arbitrator may be considered sufficient cause for postponement. Therefore, if . . . Smoak chooses to proceed, on a proper motion any award may be vacated by this Court.

Notwithstanding the district court's warning, Smoak proceeded with the RB Arbitration V while Wife's motion to appoint a different arbitrator was still pending.

**{18}**   During a November 29, 2016, hearing on Wife's motion to appoint a different arbitrator, Smoak testified that he did not believe the district court's scheduling of a hearing to consider his removal as arbitrator was a reasonable cause to postpone the arbitration, that he did not "see the point in delaying [the arbitration] further," and that notwithstanding the district court's earlier warning, he proceeded to arbitration eleven days earlier on November 18, 2016. Smoak also testified that although he was aware of the district court's limitation on the arbitrability of Paragraph 24, he nevertheless declined to adhere to that limitation because he interpreted the provision and the Settlement Agreement differently from the district court.

**{19}**   At this juncture, the district court granted Wife's motion to appoint a different arbitrator, finding "that there is clear and convincing evidence that there is evident partiality on the part of Arbitrator . . . Smoak disqualifying him from serving as arbitrator or mediator in any proceeding conducted pursuant to the Settlement Agreement[,]" and removing Smoak from serving as an arbitrator under the Settlement Agreement. The district court also disqualified Hatch from serving as counsel to the arbitrator or mediator under the Settlement Agreement on grounds of evident partiality. Based on its finding that there was evident partiality by Smoak, the district court vacated the RB Award II. Both Smoak and Red Boots filed motions to reconsider the district court's rulings.

**{20}**   In its order denying Smoak's and Red Boots' motions to reconsider its order appointing a different arbitrator, the district court noted that notwithstanding the waiver of Smoak's conflicts of interest, he agreed to be "neutral." The district court made two findings to support its conclusion that Smoak demonstrated evident partiality: (1) without appealing or moving to reconsider the district court's limitation on the arbitrability of

Paragraph 24 in the RB Arbitration I, Smoak "expressly rejected" the district court's limitation and awarded "millions of dollars . . . against [Wife] and in favor of Red Boots[;]" and (2) Smoak proceeded with arbitration when he knew a motion to appoint a different arbitrator was pending and after the district court had warned him that proceeding with arbitration might result in the vacatur of the arbitration award. The district court concluded that equity "demand[ed]" Smoak's removal prior to the entry of an award in the RB Arbitration V and that pursuant to Section 44-7A-12(a), the district court had the authority to appoint a new arbitrator because the Settlement Agreement's method for selecting arbitrators had failed. The district court relied on Section 44-7A-24 and used the same findings regarding Smoak's evident partiality in denying Smoak's and Red Boots' motions to reconsider its order vacating RB Award II. These appeals followed.

## II.    DISCUSSION

**{21}**    On appeal, all Appellants argue that: (1) the district court erred in vacating the RB Award II for evident partiality; and (2) the district court erred in prospectively disqualifying Smoak and Hatch. However, before we address those arguments, we address Appellant Smoak's argument that, as the arbitrator, he has a right to appeal the district court's decision.

## A.    Smoak Has a Right to Appeal

**{22}**    "The right to appeal is . . . a matter of substantive law created by constitutional or statutory provision." *New Mexico v. Armijo*, 2016-NMSC-021, ¶ 19, 375 P.3d 415. "Whether a party has a right to appeal is a question of law reviewed de novo." *In re Guardianship of C.G.*, 2019-NMCA-___, ¶ 26, ___ P.3d ___ (No. A-1-CA-35613, Oct. 29, 2019). "Appellate review, including the right to appellate review, . . . is governed by the rules applicable to civil appeals to the court of appeals from the district court." NMSA 1978, § 45-1-308 (1975). "And NMSA 1978, Section 39-3-2 (1966), which governs civil appeals from the district court, allows a right of appeal to 'any aggrieved party' by a district court's decision, order, or judgment." *In re Guardianship of C.G.*, 2019-NMCA-___, ¶ 26. Generally speaking, "[a]n aggrieved party means a party whose interests are adversely affected." *State v. Nehemiah G.*, 2018-NMCA-034, ¶ 15, 417 P.3d 1175 (internal quotation marks and citation omitted). Although "New Mexico has always required allegations of direct injury to the complainant to confer standing, . . . once the party seeking review alleges he himself is among the injured, the extent of injury can be very slight." *In re Guardianship of C.G.*, 2019-NMCA-___, ¶ 29 (alteration, emphasis, internal quotation marks, and citation omitted). Based on the circumstances in the case at bar, we conclude Smoak has the right to appeal the district court's orders.

**{23}**    Smoak argues he was aggrieved by the district court's orders because, among other reasons, the district court prevented him from serving as an arbitrator under the Settlement Agreement to which he was a party and from recovering arbitration costs

and fees under the RB Award II. The district court's orders directly and sufficiently aggrieved Smoak such that he has a right to appeal those orders.

**{24}** To the extent Smoak challenges the district court's disqualification of Hatch as legal counsel under the Settlement Agreement, he fails to demonstrate how *he* has standing to appeal a decision adverse to *Hatch. See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We therefore decline to address this argument further, affirming the district court on this matter, and we proceed to discuss the district court's vacatur of the RB Award II.

## B. The District Court Did Not Err in Vacating RB Award II

**{25}** Appellants challenge the district court's vacatur of the RB Award II. "Under the NMUAA, there are strict limitations on judicial review of arbitration awards." *K.R. Swerdfeger Const. v. UNM Bd. of Regents*, 2006-NMCA-117, ¶ 13, 140 N.M. 374, 142 P.3d 962. "In the absence of a statutory basis to vacate an arbitration award, the district court must enter an order confirming the award." *Id.* ¶ 14. However, upon a party's motion, the district court shall vacate an arbitration award when, among other reasons, there was "evident partiality by an arbitrator appointed as a neutral arbitrator." Section 44-7A-24(a)(2)(A). "The party seeking to vacate the award bears the burden of proving partiality." *In re Arbitration Between Town of Silver City & Silver City Police Officers Assoc.* (*Silver City*), 1993-NMSC-037, ¶ 16, 115 N.M. 628, 857 P.2d 28.

**{26}** We review the district court's ruling on motions to confirm or vacate an arbitration award for an abuse of discretion. *See Edward Family Ltd. P'ship v. Brown*, 2006-NMCA-083, ¶ 17, 140 N.M. 104, 140 P.3d 525 ("We review the district court's order confirming the arbitration award and denying the motion to vacate for abuse of discretion."). Similarly, "[w]e review the denial of a motion to reconsider for an abuse of discretion." *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628. On appeal, we must determine "whether substantial evidence in the record supports the [district] court's findings of fact and whether the [district] court correctly applied the law to the facts when making its conclusions of law." *Casias v. Dairyland Ins. Co.*, 1999-NMCA-046, ¶ 8, 126 N.M. 772, 975 P.2d 385. "Substantial evidence is that evidence which is relevant and which a reasonable mind could accept as adequate to support a conclusion." *Medina v. Found. Reserve Ins. Co.*, 1997-NMSC-027, ¶ 12, 123 N.M. 380, 940 P.2d 1175. "We view the evidence in the light most favorable to the prevailing party and indulge all reasonable inferences in support of the findings." *Eagle Laundry v. Fireman's Fund Ins. Co.*, 2002-NMCA-056, ¶ 14, 132 N.M. 276, 46 P.3d 1276. Resolving the question of whether the district court erred in vacating the RB Award II for evident partiality requires that we discuss three issues: (1) the applicability of the evident partiality standard as it applies to Smoak under the facts of this case, (2) the evidence necessary to support a finding of evident partiality, and (3) the sufficiency of the evidence supporting the district court's finding of evident partiality on the part of Smoak.

**1. Applicability of the Evident Partiality Standard to Smoak**

**{27}**     Appellants argue the district court erred in applying the evident partiality standard to Smoak because he was appointed as a "non-neutral arbitrator." Indeed, vacatur on grounds of evident partiality applies only to arbitrators appointed as *neutral* arbitrators. *See* § 44-7A-24(a)(2)(A) (providing that the district court shall vacate an arbitration award if there was "evident partiality by an arbitrator appointed as a *neutral arbitrator*" (emphasis added)); Unif. Arbitration Act § 12 cmt. 5, 7 U.L.A. 27 (2000) ("The ground of evident partiality in Section 24(a)(2)(A) by its terms only applies to an arbitrator appointed as a neutral[.]" (internal quotation marks omitted)). We must therefore determine whether the terms of the Settlement Agreement required Smoak to serve as a neutral arbitrator.

**{28}**     "Courts must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement." *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65. Although Smoak and Hatch disclosed their relationships which rendered them potentially "susceptible to influence by [Husband]," they nevertheless agreed "that they will in any future mediation or arbitration take all reasonable steps and act in good faith *to be neutral and fair to all* [*P*]*arties.*" (Emphasis added.) Applying the plain meaning of the Settlement Agreement, we conclude the Parties intended Smoak to be a neutral arbitrator such that the district court did not err in applying the evident partiality standard to him.

**2. Evidence Necessary to Find Evident Partiality**

**{29}**     Before turning to the district court's finding that there was evident partiality by Smoak, we first consider the proof necessary to establish evident partiality. Our Supreme Court has explained that "evidence of arbitrator partiality must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative[,]" and that "[a]s a general rule, partiality cannot be inferred from adverse evidentiary rulings or from the enforcement of procedural rules." *Silver City*, 1993-NMSC-037, ¶¶ 16, 18 (internal quotation marks and citation omitted). However, neither this Court nor our Supreme Court has explained what this "direct, definite" and demonstrable evidence must show to support a finding of evident partiality. *Id.* ¶ 16 (internal quotation marks and citation omitted). To do so, we therefore look to other jurisdictions for guidance.

**{30}**     As a starting point for interpreting the term, we first turn to the United States Supreme Court's decision in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), which addressed the vacatur of an arbitration award for evident partiality under the Federal Arbitration Act (the FAA). The Court was split in its attempt to establish a clear standard. Writing for the four-justice plurality, Justice Black explained that the Court had no reason to suspect the arbitrator "of any improper motives." *Commonwealth Coatings Corp.,* 393 U.S. at 147. Nevertheless, Justice Black appeared to suggest that arbitrators be held to the same ethical standards as judges,

explaining that "we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Id.* at 149. Accordingly, he suggested "that arbitrators disclose to the parties any dealings that might create an impression of possible bias[,]" and concluded that arbitrators "not only must be unbiased but also must avoid even the appearance of bias." *Id.* at 149-50. In his concurrence, Justice White repudiated the apparent stringency of Justice Black's opinion: "The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges." *Id.* at 150 (White, J., concurring). However, he wrote that an arbitrator's disclosure is required "where the arbitrator has a substantial interest in a firm which has done more than trivial business with a party." *Id.* at 151-52. As a result of the split decision in *Commonwealth Coatings Corp.*, the federal courts were left without a clear standard.

**{31}** In an early attempt to provide guidance as to the meaning of evident partiality under the FAA, the United States Court of Appeals for the Second Circuit concluded that vacatur on grounds of evident partiality required "a showing of something more than the mere appearance of bias," but something less than "proof of actual bias." *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83-84 (2d Cir. 1984) (internal quotation marks omitted). Thus, the court held that evident partiality "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Id.* at 84. The Second Circuit has since held that a party challenging an arbitration award "must prove the existence of evident partiality by clear and convincing evidence," *e.g.*, *Certain Underwriting Members of Lloyds of London v. Florida, Dep't of Fin. Servs.*, 892 F.3d 501, 505 (2d Cir. 2018), that "partiality can be inferred from objective facts inconsistent with impartiality[,] . . . [and that a] showing of evident partiality must be direct and not speculative." *E.g.*, *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). A majority of the circuits have adopted either this or a similar construction of evident partiality. *See Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989) (en banc) ("We agree with the *Morelite* court's analysis[.]"); *accord Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 545 (5th Cir. 2016); *JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003); *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 750 (8th Cir. 2003); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993); *see also Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982) (requiring proof establishing "a reasonable impression of partiality"); *Merit Ins. Co. v. Leatherbys Ins. Co.*, 714 F.2d 673, 681 (7th Cir. 1983) (suggesting that evident partiality may be shown where the "circumstances are such that a man of average probity might reasonably be suspected of partiality" and such circumstances are "powerfully suggestive of bias"). Several circuits have clarified that the party asserting evident partiality "must establish specific facts that indicate improper motives on the part of the arbitrator." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 252 (3d Cir. 2013) (internal quotation marks and citation omitted); *accord Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 306 (6th Cir. 2008); *JCI Commc'ns,*

*Inc. v. Int'l Bhd. of Elec. Workers, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003); *Consolidation Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995). Many states have followed suit and adopted these interpretations for purposes of the Uniform Arbitration Act of 2000 (UAA), §§ 1-33, 7 U.L.A. 1-52 (Supp. 2002). *E.g.*, *Denison Mines (USA) Corp. v. KGL Assoc. Inc.*, 381 P.3d 1167, 1178 (Utah Ct. App. 2016); *Fong v. MPGM Mirage Int'l Mktg.*, 381 P.3d 612, *4 (Nev. 2012) (confirming an arbitration award by order of affirmance); *Wilbanks Sec., Inc. v. McFarland*, 2010 OK CIV APP 17, ¶¶ 26-32, 231 P.3d 714, 722-23; *McNaughton & Rodgers v. Besser*, 932 P.2d 819, 822 (Colo. App. 1996).

**{32}** Although not binding on this Court, we find the standard adopted by the Fourth Circuit in *Consolidated Coal Co.*, 48 F.3d at 129, to be most persuasive. While requiring that a showing of evident partiality be made by evidence that is "direct, definite and capable of demonstration rather than remote, uncertain or speculative," *see id.* (internal quotation marks and citation omitted), as our Supreme Court has required, *see Silver City*, 1993-NMSC-037, ¶ 16, the Fourth Circuit has explained that "[t]o demonstrate evident partiality . . . , the party seeking [vacatur] has the burden of proving that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Consolidated Coal Co.*, 48 F.3d at 129 (internal quotation marks and citations omitted). "This reasonable person standard[,]" the Fourth Circuit explained, "requires a showing of something more than the appearance of bias, but not the insurmountable standard of proof of actual bias." *Id.* (internal quotation marks and citation omitted). "Furthermore, the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." *Id.* (internal quotation marks and citation omitted). "A party need not prove that the arbitrator, in fact, had improper motives." *ANR Coal Co., Inc. v. Cogentrix of N. Carolina, Inc.*, 173 F.3d 493, 500 (4th Cir. 1999). "To do so would make the standard for evident partiality equivalent to proving actual bias." *Id.* "But a party seeking vacatur must put forward facts that *objectively* demonstrate such a degree of partiality that a reason[]able person could assume that the arbitrator had improper motives." *Id.* "The party challenging the award must prove the existence of evident partiality by clear and convincing evidence[,]" *Certain Underwriting Members of Lloyds of London*, 892 F.3d at 505, which is evidence that "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790 (internal quotation marks and citation omitted). Having set forth the standard we view to be the best fit to evaluate claims of evident partiality, which we now adopt, we consider whether sufficient facts support the district court's finding of evident partiality.

### 3. The District Court's Finding of Evident Partiality

**{33}** Appellants challenge the district court's finding of evident partiality. The district court's finding that Smoak demonstrated evident partiality was based on: (1) Smoak's "intentional disregard" for the district court's ruling limiting the arbitrability of Paragraph 24; and (2) Smoak's refusal to postpone the arbitration in the RB Arbitration V, despite

the district court's express warning not to proceed to arbitration while the motion to appoint a new arbitrator was pending. After reviewing for substantial evidence, we will discuss Appellants' legal challenges to these findings. We will then turn to Smoak's more general argument that the district court is limited in the timing of, and the evidence considered in its vacatur ruling.

### a.     The District Court's Finding That Smoak Intentionally Disregarded Its Limitation on the Arbitrability of Paragraph 24

**{34}**     The district court's finding that Smoak intentionally disregarded its limitation on the arbitrability of Paragraph 24 is supported by substantial evidence. After the district court ruled that arbitration concerning Paragraph 24-related costs, attorney fees, and expenses was limited to those costs, fees, and expenses "related to disputes between [Wife] and Red Boots . . . beginning with" Wife's motion and application filed in the district court on June 28, 2012, Smoak awarded Red Boots damages under Paragraph 24 for "litigation costs incurred by Red Boots *from September of 2008* through June of 2012 amount[ing] to $730,173.58." (Emphasis added.) Indeed, on several occasions during the hearing on Wife's motion to appoint a different arbitrator, Smoak conceded that he did not follow the district court's limitation.

**{35}**     However, Appellants argue the district court's finding that Smoak intentionally disregarded the limitation on the arbitrability of Paragraph 24, made during the RB Arbitration I, was in error because the RB Award I "was res judicata on the [Paragraph] 24 claim," the district court wrongly considered the merits of the RB Award I, and the district court was prohibited from limiting the arbitrability of Paragraph 24 under its subject matter jurisdiction and the FAA. We acknowledge that our Supreme Court has held that "when arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has." *Rex, Inc. v. Manufactured Hous. Comm. of State of N.M.*, 1995-NMSC-023, ¶ 12, 119 N.M. 500, 892 P.2d 947 (alteration, internal quotation marks, and citation omitted). However, *Rex* did not discuss, nor have Appellants cited supporting authority bearing upon, the issue of whether an arbitrator's conduct in a prior related arbitration proceeding can be considered in a finding of evident partiality. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{36}**     As to Appellants' argument that the district court erred in considering the merits of the RB Award I, it is true that the NMUAA "neither empowers the district court to review an arbitration award on the merits of the controversy, nor grants the district court the authority to review an award for errors of law or fact." *Silver City*, 1993-NMSC-037, ¶ 7. However, that is not what took place here. The district court's finding of evident partiality was not predicated on the merits of the RB Award I, but on Smoak's decision to disregard a district court ruling and order Wife to pay costs in Husband's favor, evidence from which a reasonable person would have to conclude that Smoak had improper motives to favor Husband and oppose Wife.

**{37}** Red Boots also challenges the district court's limitation on the arbitrability of Paragraph 24 during the RB Arbitration I on grounds that the district court lacked jurisdiction and that the FAA precluded such a ruling. However, Red Boots misstates the issue involved in the district court's finding of evident partiality, which is not whether Smoak contravened a valid court ruling and was therefore legally mistaken, but whether Smoak ignored a district court order from which neither Smoak nor Red Boots appealed or moved to reconsider. And while the district court generally cannot infer evident partiality from adverse evidentiary rulings, *see id.* ¶ 18, it did not base its finding on such grounds. Indeed, in its order denying Smoak's and Red Boots' motions to reconsider, the district court explained that the question of whether its order limiting the arbitrability of Paragraph 24 "was within the [district c]ourt's authority or was incorrect is irrelevant to the [district c]ourt's current ruling." Instead, the district court relied upon the fact "that [Smoak] did not attempt to appeal or move for reconsideration of the [district c]ourt's determination and in [RB Award I] expressly rejected that determination resulting in millions of dollars being awarded against [Wife] and in favor of Red Boots, of which [Husband] had the greater interest, in the years following."

**{38}** Insofar as Red Boots argues for the applicability of the FAA outside the context explained above, we first note that the Parties expressly agreed that the NMUAA shall govern arbitration under the Settlement Agreement. *See Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 26, 304 P.3d 409 ("New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." (internal quotation marks and citation omitted)). Nonetheless, Red Boots fails to explain to what extent the FAA should apply. We therefore decline to review this argument further, *see Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."), and proceed to review the district court's finding that Smoak proceeded with the RB Arbitration V notwithstanding the district court's warning.

**b.     The District Court's Finding that Smoak Disregarded Its Warning Not To Proceed with the RB Arbitration V**

**{39}** The district court's finding that Smoak disregarded its warning not to proceed to arbitration is supported by the district court's unambiguous statement: "Conducting further arbitration proceedings while there is a pending motion before this Court to appoint a different arbitrator may be considered sufficient cause for postponement. Therefore, if . . . Smoak chooses to proceed, on a proper motion any award may be vacated by this Court [under Section 44-7A-24(a)(3)]." In spite of the district court's admonition, Smoak proceeded with the RB Arbitration V just days before the scheduled hearing on Wife's motion.

**{40}** Appellants argue there is no legal basis from which the district court could find evident partiality based on Smoak's refusal to postpone the RB Arbitration V. Moreover, Smoak argues that his refusal to postpone arbitration was necessary to comply with Section 44-7A-16(c) (providing that the arbitrator "may not postpone the hearing to a time later than that fixed by the agreement to arbitrate for making the award unless the

parties to the arbitration proceeding consent to a later date"), and the Settlement Agreement, which requires the arbitrator to set arbitration within sixty days "after notice by the complaining party of the demand for arbitration." Here, again, Appellants misstate the issue, which is not whether the NMUAA expressly provides that an arbitrator's refusal to postpone arbitration upon showing of sufficient cause for postponement is a sufficient basis for a finding of evident partiality. Nor is the issue whether Smoak's refusal to postpone arbitration was done so as to comply with the law and Settlement Agreement, an argument which is belied by the record.[3] Rather, the issue is whether Smoak's conduct in refusing to comply with the district court's admonition and proceeding to arbitration while Wife's motion to remove him as arbitrator was pending in the district court is evidence from which a reasonable person would have to conclude that Smoak was partial to the other party to the arbitration.

### c.      Limitations on the Evidence Considered in the District Court's Vacatur

**{41}**     Smoak challenges the district court's vacatur, arguing the district court must wait until after an award is entered before vacating the award and that the district court's review for evident partiality is limited to the arbitrator's disclosures, to conduct occurring during the arbitration from which the vacated award originates, and to conduct occurring "in the execution of" the vacated award.

**{42}**     Smoak first argues that the district court "cannot consider vacatur or removal of an arbitrator for partiality before [alternative dispute resolution] commences." We agree that vacatur of an arbitration award cannot occur unless and until an arbitration award is issued. *See* Section 44-7A-24(a) (providing circumstances under which the district court "shall vacate *an award made in the arbitration proceeding*" (emphasis added)). However, as we will explain further below, we disagree that the district court erred in prospectively disqualifying Smoak and Hatch from future arbitrations under the Settlement Agreement.

**{43}**     Smoak also argues the district court's review of evident partiality was limited to whether he disclosed his interests and relationships that might affect his partiality. To be sure, other jurisdictions have recognized that the failure to disclose information that would be required under their equivalents to Section 44-7A-13 may provide evidence to support a finding of evident partiality. *E.g.*, *Scandinavian Reinsurance Co. v. Saint Paul*

---

3Smoak argues November 18, 2016, was the latest date on which he could have scheduled arbitration while remaining in compliance with the Settlement Agreement and thus Section 44-7A-16(c). However, the Settlement Agreement provides that "[t]he arbitrator shall set the arbitration within sixty (60) days after notice by the complaining party of the demand for arbitration." Although Smoak cites several points in the record purportedly demonstrating his scheduling of arbitration following a demand for arbitration, these citations demonstrate Smoak's attempt to schedule *mediation* after a demand for mediation was made as well as his scheduling of arbitration based on the demand for mediation, not arbitration. The earliest point at which we can find a demand for arbitration that would trigger the sixty-day limitation period under the Settlement Agreement is October 10, 2016. Based on the record and citations provided to this Court, we are unable to conclude that November 18, 2016, was the final date on which Smoak could have scheduled arbitration. *See N.M. Cattle Growers' Assoc. v. N.M. Water Quality Control Comm'n*, 2013-NMCA-046, ¶ 16, 299 P.3d 436 (recognizing that we will not search the record for facts to support a party's arguments).

*Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) ("Among the circumstances under which the evident partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties."); *Narayan v. Assoc. of Apartment Owners of Kapalua Bay Condo.*, 398 P.3d 664, 673 (Haw. 2017) ("Evident partiality may be found in two situations: when an arbitrator fails to make necessary disclosures to the parties, or when additional facts show actual bias or improper motive, even if the arbitrator makes the necessary disclosures."). Smoak relies on Section 44-7A-13(d), which provides a presumption of evident partiality under Section 44-7A-24(a)(2) when a neutral arbitrator fails to disclose certain interests or relationships. However, Smoak cites no authority to support his argument that the district court's review of evident partiality is exclusively limited to such evidence, and we therefore assume no such authority exists. *See Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{44}** Nor has Smoak cited authority limiting the district court's consideration of an arbitrator's conduct to that which occurs during the arbitration from which the vacated award originates. *See id.* Instead, Smoak cites *Fernandez v. Farmers Insurance Company of Arizona*, 1993-NMSC-035, 115 N.M. 622, 857 P.2d 22, to support the argument that vacatur of an arbitration award "should be based on conduct or events that occur in the execution of that award. In *Fernandez*, our Supreme Court, citing NMSA 1978, Sections 44-7-12, and -13 (1971, repealed 2001), held that "[t]he district court's review thus is generally limited to allegations of fraud, partiality, misconduct, excess of powers, or technical problems in the execution of the award." 1993-NMSC-035, ¶ 9. Our reading of *Fernandez* and the relevant statutory authority, however, leads us to conclude that our Supreme Court's use of the phrase "in the execution of the award" was not intended to limit the scope of a district court's review for evident partiality, but was directed at the modification or correction of an arbitration award under Section 44-7-13. Indeed, while Section 44-7-13 appeared to concern matters of technical issues in the execution of an arbitration award, Section 44-7-12 neither appears to have contemplated nor limited by its language the evidence the district court may consider in evaluating claims of evident partiality. *Compare* § 44-7-13 (permitting the modification or correction of an arbitration award where there were errors in the arbitration award or with the arbitrator's consideration of matters not submitted to them), *with* § 44-7-12 (listing conduct by the arbitrator which are grounds for vacating an arbitration award). We will therefore not read into Section 44-7-12, nor its amended equivalent Section 44-7A-24, language which is not there. *See* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."); *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 ("The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted); *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (explaining

that "we will not read into a statute or ordinance language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)).

**{45}** Based on the foregoing, we conclude the district court's findings were supported by substantial evidence of a clear and convincing nature and that its finding of evident partiality was not an abuse of discretion. Indeed, Smoak's repeated disregard for the district court's rulings, in favor of Husband and against Wife, is direct, definite, and demonstrative evidence from which a reasonable person would have to conclude that Smoak was partial and had improper motives in favor of Husband and against Wife. Having concluded the district court did not err in vacating the RB Award II, we turn to the question of whether it erred in prospectively disqualifying Smoak and Hatch from further arbitrations under the Settlement Agreement.

## C.     The District Court Did Not Err in Prospectively Disqualifying Smoak and Hatch

**{46}** Appellants argue the district court was without authority to prospectively disqualify Smoak and Hatch from future arbitrations conducted pursuant to the Settlement Agreement. Here, the district court prospectively disqualified Smoak and Hatch under the court's equitable authority. "The district courts of this State have broad jurisdiction—legal and equitable, original and appellate." *State ex rel. State Highway & Transp. Dep't of N.M. v. City of Sunland Park*, 2000-NMCA-044, ¶ 10, 129 N.M. 151, 3 P.3d 128. "[O]nly if a statute so provides with express language or necessary implication will New Mexico courts be deprived of their inherent equitable powers." *Sims v. Sims*, 1996-NMSC-078, ¶ 30, 122 N.M. 618, 930 P.2d 153. "[W]e will not disturb the district court's exercise of its equitable jurisdiction on appeal [absent an abuse of discretion]." *City of Sunland Park*, 2000-NMCA-044, ¶ 10.

**{47}** Although the NMUAA does not expressly provide for the prospective disqualification of arbitrators, it does indicate an apparent authorization of such actions. *See* § 44-7A-12(b) (defining circumstances under which an individual "may not serve as an arbitrator required by an agreement to be neutral"); § 44-7A-13(b) (permitting vacatur of an arbitration award when "a party timely objects to the appointment or continued service of the arbitrator based upon" the arbitrator's required disclosures). Significantly, the NMUAA does not expressly state or necessarily imply that district courts are prohibited from exercising their equitable authority to prospectively disqualify arbitrators for evident partiality. We therefore conclude the district court did not abuse its discretion in disqualifying Smoak and Hatch based on its finding of evident partiality.

## III.     CONCLUSION

**{48}**     Finding no error by the district court, we affirm.

**{49}     IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**M. MONICA ZAMORA, Judge**